Kramer Appeal.

Argued January 28, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

. *Michael Edelman,* with him *Donald E. Funk,* for appellant.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellee.

*Irvin Stander,* for intervenors.

OPINION BY MR. JUSTICE COHEN, May 27, 1970:

This is an appeal from an order of the Court of Common Pleas No. 2 of Philadelphia County dismissing preliminary objections filed under §406 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, Art. IV, as amended, 26 P.S. §1-406 (Supp. 1970), in response to a Declaration of Taking filed by the City of Philadelphia.

In 1901 Blue Grass Land Company, owner of a tract of land bounded by Welsh Road, Blue Grass Road, Marshall Street and Gregg Street located in the 35th Ward of the City of Philadelphia filed with the City a plan of streets for the said tract. Shown on this plan of streets was one designated as Bruce Avenue which was to run north and south between Marshall Street and Blue Grass Road. Bruce Avenue was never placed on the City Plan, no improvements had been installed, and the street was never physically open or travelable. In January, 1965 the City Council passed and the Mayor approved an ordinance changing the zoning classification of this tract to Area Shopping Center. The whole tract except for one lot owned by Morris Kramer, appellant, and one lot which is not involved in this litigation is legally or beneficially

owned by Harry Kravitz et al., intervenors, who desire to build a shopping center on the land. Appellant's tract is located in the middle of the larger tract and abuts the southwest side of Bruce Avenue (Bruce Avenue does not run exactly north and south).

In order to clear title conditions intervenors desired that an ordinance be enacted whereby the street could be placed on the City Plan and legally opened and that a second ordinance then be enacted striking and vacating the street. In 1965 the City Planning Commission and other city departments concerned with street matters made a finding that Bruce Avenue was not a required street for traffic circulation or for other municipal purposes. Thereafter an ordinance, No. 1054, was introduced in City Council authorizing and directing the placement of Bruce Avenue on the City Plan. This ordinance was enacted and approved by the Mayor on July 30, 1965. In March, 1966 Bill No. 1784 was introduced in City Council authorizing the striking and vacating of Bruce Avenue. A hearing was held on April 28, and the ordinance was thereafter enacted by Council and approved by the Mayor on May 20, 1966. Both ordinances required intervenors to file an indemnity agreement together with corporate surety to indemnify the City against any damages that might arise from the opening and striking of Bruce Avenue.

On April 19, 1966, after the introduction of the striking ordinance but prior to its passage, the City filed a Declaration of Taking in the court of common pleas. The Declaration stated that the City was taking an easement for street purposes over the land designated in ordinance 1054 (Bruce Avenue). Notice of the filing of the Declaration was served upon appellant on April 29, and the notice in part stated, "Your property has been condemned as a no taking in a larger area taken for street purposes." On May 23, 1966 appellant filed preliminary objections to the Declaration,

and on July 22, 1968 the court below granted leave to the intervenors to intervene and file an answer to the preliminary objections. On November 12, 1968 the lower court entered an order dismissing the preliminary objections, and it is from that order that this appeal is taken.

It is first necessary to determine the validity and effect of the steps already taken by the City and intervenors and also to determine what questions are properly before us. Ordinance 1054 which purports to accept the dedication of Bruce Avenue and place it on the City Plan is of no effect because of the provisions of the Act of May 9, 1889, P. L. 173, No. 192, §1, 36 P.S. §1961 which states in relevant part: "Any street . . . laid out by any person . . . in any . . . plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out."

The purpose of the statute is to "relieve land upon which streets have been laid out by the owners, but not used, from the servitude imposed: . . . The enactment is actually a statute of limitation applicable to any and all seeking to assert the public character of a street, be they the municipal authorities or the individual lot owners." *Rahn v. Hess,* 378 Pa. 264, 269, 106 A. 2d 461 (1954). There is no question that the street was not opened to or used by the public within a twenty-one year period of 1901, and therefore there could be no acceptance without the consent of the owners of the land on which Bruce Avenue is laid out. In *Rahn,* supra at 269, we held that the abutting lot owners were the owners whose permission was required, but in that case it was clear that the abutting lot owners had

acquired the fee in the street. In the case before us, the record is barren of any evidence as to ownership of the land on which Bruce Avenue is laid out, and therefore we can not say who can give the requisite permission.[1] In its brief, however, the City states that "the taking of Bruce Avenue is solely an exercise of eminent domain and in no way was an attempted acceptance of a dedicated road" and that "the City of Philadelphia could not legally accept Bruce Avenue as a public street." The intervenors agree that the taking is an exercise of eminent domain and not an attempted acceptance, and as §402 of the Eminent Domain Code states, "(a) Condemnation . . . shall be effected only by the filing in court of a declaration of taking . . .," Ordinance 1054 is of no effect.

Ordinance 1784 which purported to direct the striking of Bruce Avenue from the City Plan and the vacating of it is likewise of no effect because at the time of its passage Bruce Avenue had not been properly accepted or placed on the City Plan. As ordinance 1054 could not do what the City or the intervenors originally desired it to accomplish, there was no public street in existence which it could strike and vacate. Also, assuming that the passage of an ordinance is the proper method to abandon a less-than-fee interest taken by eminent domain (as to a fee interest see §410), ordinance 1784 could not be effective for that purpose because it was enacted prior to the expiration of the thirty day period within which appellant could file preliminary objections to the Declaration of Taking. Therefore, on May 20, 1966 the validity of the taking had

---

[1] As the deed by which appellant acquired his tract is not part of the record, we can not determine the extent of his interest. See *Beechwood v. Reed*, 438 Pa. 178, 265 A. 2d 624 (1970); *Bieber v. Zellner*, 421 Pa. 444, 220 A. 2d 17 (1966); *Oliver v. Ormsby*, 224 Pa. 564, 73 Atl. 973 (1909); *Taylor v. Gross*, 195 Pa. Superior Ct. 225, 171 A. 2d 613 (1961).

504

not been established either by judicial determination or the passage of time, and the ordinance could not abandon what did not yet exist.

Having determined that these ordinances are of no effect, we can turn to the question of what issues are properly before us at this time. Appellant argues that if the City is permitted to take an easement and later vacate and abandon the street a shadow will be cast upon his easement and his property will be landlocked. We need not determine the precise extent of appellant's interests at this time or the extent of his interests in the event the City subsequent to the taking decides to vacate the street. Those questions may be raised when the vacation actually takes place, and §613 of the Eminent Domain Code provides for the payment of damages to a landowner whenever a public road is vacated even though no land is actually taken. We have recently held that the issue to be raised under §613 is exactly that which appellant attempts to raise at this time, impairment of access. *Hession Condemnation Case,* 430 Pa. 273, 242 A. 2d 432 (1968).

After having thus determined the effect of what was done previously, we are faced with a Declaration of Taking whose validity is challenged. The fact that the City did not accept the street within twenty-one years of dedication in no way affects the power of the City to take an easement by means of the procedures outlined in the Eminent Domain Code. *Whittaker Appeal,* 386 Pa. 403, 126 A. 2d 715 (1956). Therefore, we come to the only issue properly before us at this time—whether this taking is for a public or private purpose. Appellant argues that the taking is solely for the benefit of the intervenors who plan to build a shopping center on their land. If this action involved only the taking of land on which an access road to a shopping center were to be constructed, it would be identical to *Washington Park, Inc. Appeal,* 425 Pa. 349, 229

A. 2d 1 (1967) in which we stated, at 355, " 'If a road is to be open for public travel the purpose for which the public may wish to travel is not material. . . .' " We found that exercise of power to be for a public purpose. The record in this case, however, clearly shows that the City is not interested in constructing a road for the public's use but rather is concerned with clearing the title to the land so that the shopping center can be built and it can begin to receive tax revenue. The record clearly indicates that the City intends to abandon the street soon after it is established. Therefore, the real issue is whether promoting the existence of the shopping center is a public purpose, and this is one step beyond what we had to decide in the *Washington Park* Appeal.

The intervenors do not deny that they will receive a benefit from the existence of the shopping center, but they and the City argue that the public interest will be promoted through the tax revenues the center will generate, through the jobs the center will create and through the convenient shopping facilities that will be made available to area residents. The burden is on appellant to prove a private rather than a public purpose, and it is a heavy one. *Washington Park,* supra at 353. Also, the taking does not "lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited." *Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 341, 54 A. 2d 277 (1947). However, "the power of eminent domain may not be employed unless the public is to be the primary and paramount beneficiary of its exercise." *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 334, 221 A. 2d 138 (1966).

The record contains no testimony as to whether promoting the existence of this shopping center is in

the public interest, and all we have before us are the arguments of the parties. In basing its decision solely on our holding in *Washington Park Appeal,* the lower court erred because, as discussed above, the cases are not identical. Beyond that, it is impossible to know upon what facts the court below based its conclusion that the taking was for a public purpose as no hearing was ever held and no testimony taken. Therefore, the record must be remanded for a hearing at which appellant may attempt to prove that this taking is not for a public purpose.

The order is vacated, and the record is remanded for proceedings consistent with this opinion.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.