In Re: **CONDEMNATION OF LAND FOR THE SOUTH EAST CENTRAL BUSINESS DISTRICT REDEVELPOMENT AREA # 1**

Appeal of: **Alan R. Yarnall.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2008.

Decided April 22, 2008.

---

David L. Rohde, Drexel Hill, for appellant.

Vincent B. Mancini, Media, for appellee, Redevelopment Authority of the City of Chester.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Alan R. Yarnall (Yarnall) appeals from the February 13, 2007, order of the Court of Common Pleas of Delaware County (trial court), which dismissed Yarnall's preliminary objections to the Declaration of Taking (Declaration) filed by the Redevelopment Authority (Authority) of the City of Chester (City). We affirm.

Yarnall owns the property at 200 East Fifth Street in the City (the Property), which is currently in use as a strip club. The Property is located within the South East Central Business District Redevelopment Area # 1 (Redevelopment Area), which the City Planning Commission certified as blighted on April 14, 2004. (Findings of Fact, Nos. 2, 6, 20.)

The Authority filed the Declaration with the trial court on July 14, 2005. Paragraph 3 of the Declaration states that the Property is being condemned in accordance with an approved redevelopment plan to carry out a clearance of certain properties. Paragraph 2 of the Declaration states that the Property is being condemned to acquire and redevelop educational buildings, including charter school buildings. (Findings of Fact, Nos. 4, 7–9.)

Yarnall filed preliminary objections to the Declaration, asserting, *inter alia,* that the Authority condemned the Property for the private, for-profit use of Vahan Gureghian (Gureghian). Yarnall alleged that the original redevelopment plan did not include the use of school buildings, that the City planning Commission amended the plan to include the use of school buildings in order to increase the real estate holdings of Gureghian and that, prior to the condemnation, the Authority entered into a contingent agreement with Gureghian for the sale and redevelopment of the Property. (R.R. at 125a.)

Following a hearing on the preliminary objections, the trial court made the following findings of fact. On May 12, 2004, the Authority authorized an agreement of sale and redevelopment (Agreement) with Gureghian contingent upon approval by City Council. The Agreement requires that Gureghian gut and renovate the Property's existing building to create a copy center, classrooms, offices and a library for the Chester Community Charter School (Charter School). The Agreement also requires that Gureghian, and his successors and assigns, devote the Property only to developing the Charter School, that this use restriction be a covenant running with the land and that the Property's deed so provide. (Findings of Fact, Nos. 13, 25, 27, 31.)

On August 11, 2004, the City Planning Commission amended the redevelopment plan to provide for educational uses in the Redevelopment Area.[1] The amendment was intended to benefit the City's residents, not Gureghian.[2] On February 9, 2005, the City Council approved the Agreement and the amended redevelopment plan. On July 6, 2005, the Authority and Gureghian executed the Agreement. (Findings of Fact, Nos. 11–15.)

■ The trial court concluded that the Charter School is an independent public school and, therefore, the Authority condemned the Property for a public use. The trial court also concluded that the taking did not lose its public character merely because Gureghian may profit from the taking. The trial court further concluded that the taking was proper despite the fact that the Property itself may not be blighted. (Conclusions of Law, Nos. 21–24, 26, 29.) Thus, the trial court dismissed Yarnall's preliminary objections. Yarnall now appeals to this court.[3]

Section 9(i) of the Urban Redevelopment Law (Law), Act of May 24, 1945, P.L. 991, as amended, 35 P.S. § 1709(i), authorizes an authority to acquire by eminent domain any real property within a redevelopment area for the public purposes set forth in the Law. Those public purposes include the elimination of blighted areas through economically and socially sound redevelopment. Section 2(i) of the Law, 35 P.S. § 1702(i). To effectuate this purpose, an authority may sell real property in a redevelopment area, subject to approval by the local governing body, and enter into contracts necessary or convenient to the exercise of its powers. Sections 9(k) and 9(t) of the Law, 35 P.S. §§ 1709(k) & 1709(t).

Before acquiring private property by eminent domain, an authority is required to prepare a redevelopment proposal for the blighted area. Section 10(a) of the Law, 35 P.S. § 1710(a). The authority may include in its redevelopment proposal "the form of the redevelopment contract with the redeveloper selected" by the authority. Section 10(j) of the Law, 35 P.S. § 1710(j). Where an authority sells real property to a redeveloper in furtherance of a redevelopment contract, the deed shall contain such provisions as the authority may deem desirable to run with the land in order to effectuate the purposes of the

---

1. The Authority's executive director testified that the original redevelopment plan inadvertently omitted permission to use the Property for educational uses. (R.R. at 780a.)

2. The trial court found testimony that the proposed redevelopment was intended to provide a public benefit to be credible. (Findings of Fact, No. 28.)

3. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. In re Redevelopment Authority of the City of Philadelphia (1839 N. Eighth St.), 595 Pa. 241, 938 A.2d 341 (2007).

Law. Section 11(b) of the Law, 35 P.S. § 1711(b).

In *Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A.2d 277 (1947), our supreme court specifically addressed whether the Law violates a property owner's constitutional rights where the sale of the property involved in a redevelopment project ultimately results in taking the property from one individual and giving it to another. Our supreme court held that the Law is constitutional, stating:

> Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public.... [However,] [i]t is not the object of the statute to transfer property from one individual to another; such transfers, so far as they may actually occur, are purely incidental to the accomplishment of the real or fundamental purpose [i.e., the clearance, reconstruction and rehabilitation of the blighted area].

*Belovsky*, 357 Pa. at 340, 54 A.2d at 282–83. Thus, the court concluded that a taking does not "lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited." *Id.* at 341, 54 A.2d at 283.

■ In *In re Forrester*, 575 Pa. 365, 370, 836 A.2d 102, 105 (2003) (citation omitted), our supreme court expressed the principle as follows:

[A] taking will be seen as having a public purpose only where 'the public is to be the primary and paramount beneficiary of its exercise.' Thus, for a taking to be considered as effectuating a public purpose, this court has required that it is the citizenry at large, rather than a private entity or individual, that will be the principal recipient of any benefit. **In other words, a taking is proper if the benefit to the public is primary and any benefit to a private individual is only incidental.**

### I. Taking for Private Use

Yarnall argues that the trial court abused its discretion and/or committed an error of law in concluding that the Authority did not take Yarnall's Property primarily for the private use of Gureghian. We disagree.

■ The Law clearly permits redevelopment authorities to select redevelopers and to negotiate contracts for the sale and redevelopment of real property within a redevelopment area prior to submitting a redevelopment proposal for approval. Yarnall does not challenge the validity of these provisions of the Law; thus, Yarnall cannot claim that the Authority took the Property for the private use of Gureghian simply because the Authority selected Gureghian as redeveloper and negotiated with him a contract for the sale and redevelopment of the Property before the condemnation.[4]

■ Moreover, the mere fact that Gureghian may profit from the sale and redevelopment of the Property does not negate Gureghian's contribution to the elimination of blight in the Redevelopment Area. In-

---

4. Yarnall asserts that Gureghian attempted to buy the property of another individual named Ernestine Brown, and, when she refused to sell, Gureghian sought to obtain the property through eminent domain. However, Yarnall concedes that Gureghian never approached the Authority about the condemnation of the Property in this case. (Yarnall's brief at 11–12.)

deed, ultimately, Yarnall complains about the Authority's selection of Gureghian because Gureghian has been successful in developing other charter schools. (*See* Yarnall's brief at 11–19.) However, to ensure the removal of blight in the Redevelopment Area, it makes sense to contract with someone with a proven track record.

■ Nevertheless, Yarnall argues that the benefit to the public from the expansion of the Charter School is only incidental to Gureghian's profits.[5] In making his argument, Yarnall speculates that Gureghian might charge excessive rent for the Property, that authorities might not renew the Charter School's charter and that the Charter School might become unprofitable and close. (Yarnall's brief at 18.) However, Yarnall does not cite any evidence to support his dire predictions or to support his contention that the public benefit is only incidental to Gureghian's profits.[6] If Gureghian operated his business in a manner that resulted in the closure of charter schools, Gureghian ultimately would have no business. It is in Gureghian's interest to help charter schools succeed, and, where charter schools succeed, there is a benefit to the public.

■ Yarnall also argues that the taking was improper because the Property, itself, is not blighted. In making this argument, Yarnall points out that, in *In re Redevelopment Authority of the City of Philadelphia*, 891 A.2d 820 (Pa.Cmwlth.), *aff'd in part, rev'd in part and remanded*, 595 Pa. 241, 938 A.2d 341 (2007), this court stated that a certification of blight does

not, in and of itself, authorize the condemnation of property. This is true. However, in *Crawford v. Redevelopment Authority*, 418 Pa. 549, 555, 211 A.2d 866, 869 (1965) (citations omitted), our supreme court explained:

> We cannot construe the actions of [an authority] as arbitrary merely because one small part of the entire blighted area is free from blight. Comprehensive planning requires that areas be considered in their entirety and not in their unseverable parts. . . . '[T]he purpose of the authority is to deal with an area rather than with individual properties. . . . And it is generally settled that unless bad faith, arbitrary action, or failure to follow a statutory requirement are shown, the certification by an [a]uthority that an area is blighted and the plan for improving it are not subject to judicial review. . . .'

In other words, a certification of blight does not authorize the condemnation of a property where the certification was in bad faith, was arbitrary or failed to follow the law. Here, Yarnall has not shown that the certification of blight was in bad faith, was arbitrary or failed to comply with the law.

■ Finally, Yarnall argues that the trial court abused its discretion in finding credible: (1) Gureghian's testimony that the Property was the only location upon which he could construct a copy center, classrooms, offices and a library; and (2) testimony that the Property would have been taken even if its current use were not a strip club. (Yarnall's brief at 20, 24.)

---

5. We note that charter schools are authorized by law to lease facilities from for-profit entities. *West Chester Area School District v. Collegium Charter School*, 571 Pa. 503, 812 A.2d 1172 (2002).

6. The burden of proving that the condemnor has abused its discretion is on the objector or

condemnee, and that burden is a heavy one because, in such cases, there is a strong presumption that the condemnor has acted properly. *Appeal of Waite*, 163 Pa.Cmwlth. 283, 641 A.2d 25 (1994), *appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994).

However, this court may not disturb the credibility determinations of the trial court. *In re Condemnation of Lands of Laughlin,* 814 A.2d 872 (Pa.Cmwlth.), *appeal denied,* 573 Pa. 700, 825 A.2d 1263 (2003).

## II. Waiver

Yarnall argues that the trial court erred in concluding that he waived several issues because he did not raise them in his preliminary objections. In his brief, Yarnall claims that he did not waive the following arguments: (1) the taking is procedurally flawed because the Agreement, by its own terms, is unenforceable; (2) the bond is inadequate; and (3) the taking is improper because it was based on the use of the Property as a strip club. (Yarnall's brief at 28.) We disagree.

 Issues that may be raised by preliminary objection under the former Eminent Domain Code [7] must be raised or they are waived. *In re Condemnation by the Economy Borough Municipal Authority,* 834 A.2d 685 (Pa.Cmwlth.2003), *appeal denied,* 577 Pa. 737, 848 A.2d 930 (2004). Preliminary objections under section 406(a) are limited to: (1) the power or right of the condemnor to appropriate the condemned property, unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; and (4) the declaration of taking. Section 406(a) of the former Eminent Domain Code, 26 P.S. § 1–406(a). [8]

First, Yarnall concedes that his challenge to the adequacy of the bond could have been raised under section 406(a).

(Yarnall's brief at 29.) Second, Yarnall's claim that the taking was procedurally flawed because it involves an unenforceable contract is a challenge to the procedure followed by the condemnor. Thus, Yarnall could have raised that issue under section 406(a). Third, Yarnall's claim that the taking was improper because it was based on the use as a strip club is a challenge to the Declaration. Thus, Yarnall could have raised that issue under section 406(a). Because Yarnall failed to raise these issues in his preliminary objections, they are waived.

Accordingly, we affirm.

## ORDER

AND NOW, this 22nd day of April, 2008, the order of the Court of Common Pleas of Delaware County, dated February 13, 2007, is hereby affirmed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the decision of the majority to affirm the trial court's dismissal of preliminary objections and approval of the condemnation and transfer from one private owner, Alan R. Yarnall, to another private owner, Vahan Gureghian, under circumstances that are highly constitutionally suspect. As the majority notes, Yarnall's property at 200 East Fifth Street in the City of Chester (Property) is located in the South East Central Business District Redevelopment Area # 1 (Redevelopment Area), which the City Planning Commission certified as blighted on April 14, 2004. One month later, the Redevelopment Authority (Authority) authorized an

---

7. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101 to 1–903, repealed by the Act of May 4, 2006, P.L. 112. Although the former Eminent Domain Code has been repealed, the events in this case occurred while the statute was still in effect.

8. Similar provisions to section 406(a) of the former Eminent Domain Code are found at 26 Pa.C.S. § 306(a).

Agreement of Sale and Redevelopment Agreement with Gureghian to place into motion the steps necessary for him to obtain and develop the Property to expand his Chester Community Charter School (Charter School) to add a library, copy center and classrooms.

The July 14, 2005 Declaration of Taking in this matter provides that the Property is being condemned pursuant to the former Eminent Domain Code [1] and pursuant to the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.2, for purposes of acquisition and redevelopment of educational institutional buildings (including public, private and charter schools) and for uses accessory thereto. The Charter School is located directly next door to the Property. Although the Charter School is required by law to be a nonprofit corporation, Section 1703–A of the Charter School Law, Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. § 17–1703–A, there is no dispute that Gureghian leases other properties that comprise the Charter School to the Charter School at a profit and further that it is operated by a for-profit management company owned by Gureghian.

The authority to exercise eminent domain powers is necessarily in derogation of a private right and must be strictly construed. *See Middletown Township v. Lands of Stone,* 595 Pa. 607, 939 A.2d 331 (2007); *Winger v. Aires,* 371 Pa. 242, 89 A.2d 521 (1952). In *Redevelopment Authority of Erie v. Owners or Parties in Interest,* 1 Pa.Cmwlth. 378, 390, 274 A.2d 244, 250 (1971), this Court stated:

Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another. In Lance's Appeal, 55 Pa. 16, 25 (1867), the Supreme Court held that the power of eminent domain can never be exercised except for a public purpose supposed and intended to benefit the public, and that "after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking. Otherwise, it would be a fraud on the owner, and an abuse of power."

In Philadelphia Clay Co. v. York Clay Co., 241 Pa. 305, 309–310, 88 A. 487, 488 (1913), the court stated the following: "While the power of the Legislature to invest individuals or corporations with the right to take private property for a public use is clearly recognized by the Constitution, there is not a suggestion anywhere that private property may be taken for a private use. It has been uniformly held by the courts in our own state as well as in other jurisdictions that under the right of eminent domain private property can only be taken for a public use, and that it is not within the power of the Legislature to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation. The underlying principle is that the owner of property has the right to the uninterrupted use and enjoyment of it against all the world, subject, however, to the sovereign

---

**1.** Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. §§ 1–101–1–903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112, and replaced by the consoli-dated Eminent Domain Code, 26 Pa.C.S. §§ 101–1106, effective in 120 days. Provisions of the former Eminent Domain Code apply to the operative facts in this case.

right of the state to take so much of it as may be necessary to serve the various public uses to which it may be properly subjected."

The effect of a certification of blight under the Urban Redevelopment Law must be considered with these underlying principles in mind. In *Redevelopment Authority of Scranton v. Kameroski,* 151 Pa. Cmwlth. 345, 350, 616 A.2d 1102, 1104 (1992), this Court stated:

> A certification of blight does not in and of itself give a condemnor, such as [Scranton Redevelopment Authority], the authority to condemn all property within the area. Under the URL, a certification of blight is merely an internal finding that certain physical conditions exist in the project area that make the area "blighted." The certification itself does not affect property rights but only sets the stage for redevelopment.

The Supreme Court recently reiterated in regard to "public purpose":

> According to our Court, "a taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise." *In re Bruce Ave.,* 438 Pa. 498, [505,] 266 A.2d 96, 99 (1970). In considering whether a primary public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking. *Belovsky v. Redevelopment Authority,* 357 Pa. 329, [340,] 54 A.2d 277, 283 (1947). Stated otherwise, the **true** purpose must primarily benefit the public.

*Middletown Township,* 595 Pa. at 617, 939 A.2d at 337. The meaning of this requirement is that a redevelopment authority is not free to do whatever it wants with a

person's private property once an area is certified as blighted. The courts still must assure that the true purpose of a taking is for a public use.

In the Pennsylvania Supreme Court's recently filed decision in *In re Redevelopment Authority of Philadelphia,* 595 Pa. 241, 938 A.2d 341 (2007), it affirmed that part of this Court's order that overruled the trial court's finding of a waiver of issues for the condemnee's failure to challenge the blight certification against the neighborhood surrounding the subject property.[2] The court, moreover, did not endorse the position taken by the trial court that once the subject land was certified as blighted it was then proper to transfer it to private development regardless of "who" that future developer might be. Deciding based on the limited facts presented, the Supreme Court however reversed this Court's determination that the transfer at issue to a religious organization to establish a faith-based but non-denominational school to serve students in a disadvantaged area violated the Establishment Clause of the First Amendment. Although stating that elimination of blight is a valid public purpose and that this Court was correct in concluding that an effect of the taking was to advance a religious organization's mission to provide faith-based educational services, the Supreme Court nevertheless held that because the exercise of eminent domain to eliminate blight has been approved by both it and the United States Supreme Court, the taking of the condemnee's property and sale to a private developer, even one that is a religious entity, did not make the taking unconstitutional under the three-prong test laid out in *Lemon v.*

**2.** Review of a certification of blight and subsequent taking by a redevelopment authority is limited to a determination that the authority has not acted in bad faith, that it has followed the statutory procedures and that it has not violated any constitutional safeguards. *Crawford v. Redevelopment Authority of Fayette County,* 418 Pa. 549, 211 A.2d 866 (1965).

*Kurtzman,* 403 U.S. 602, 91 S.Ct. 2125, 29 L.Ed.2d 745 (1971).

In a lengthy dissent in *In re Redevelopment Authority of Philadelphia,* Justice Baer concluded that the government provided direct aid to a religious school in violation of the Establishment Clause, which rendered the taking unconstitutional. He strongly dissented to what he characterized as an unfortunate decision by the court much like Justice Clarence Thomas in *Kelo v. City of New London,* 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), who totally disagreed with the decision in *Kelo* to affirm a taking of the petitioners' private property to implement a comprehensive economic development plan for the city. After examining current public use clause jurisprudence, Justice Thomas concluded that the conflict of principle raised by the "boundless use of the eminent domain power should be resolved in petitioners' favor." *Id.* at 523, 125 S.Ct. at 2687, 162 L.Ed.2d at 479.

Assuring that the true purpose of a taking is for a public use is of overriding importance. The Supreme Court has concluded: "Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public." *Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 340, 54 A.2d 277, 282 (1947). It also has stated that a taking does not "lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited." *Id.* at 341, 54 A.2d at 283. *See also In re Forrester,* 575 Pa. 365, 836 A.2d 102 (2003). In Justice Kennedy's concurring opinion in *Kelo,* 545 U.S. at 491, 125 S.Ct. at 2669, 162 L.Ed.2d at 458, he warned: "A court applying rational-basis review under the Public Use Clause should strike down a taking that, by a clear showing, is intended to favor a particular private party, with only incidental or pretextual public benefits. . . ."

In the present case, there are many indications that the primary and paramount beneficiary of this taking will be Gureghian, with any public benefit being incidental and pretextual. As Yarnall stresses, Gureghian will receive considerable money on the rental of the subject property by the Charter School. Gureghian testified that he owns the ground that the Charter School occupies and that the School leases the ground from Gureghian and pays rent directly to him. He owns Charter School Management, Inc., which manages the School, and it made a profit for 2005. The trial court found it irrelevant that the Charter School paid an annual rent of $1.1 million directly to Gureghian for 2003–2004. The trial court erred in finding this evidence to be irrelevant as it related directly to the issue raised, *i.e.,* that the taking was to promote the private profit-making enterprise that Gureghian developed in Chester, using the Authority as the vehicle to take private property from A to give to B (Gureghian) for his private business. When asked by counsel for Yarnall whether the Authority knew before the hearing that Gureghian rents the ground occupied by the Charter School, the Executive Director (David Sciocchetti) stated that he either read about it or had seen newspaper accounts, and he responded in the affirmative when asked if he was concerned to learn that Gureghian would continue to charge rent to the School to his own benefit.

If the primary purpose of a taking is to benefit a public institution, then the most direct way of benefiting it is to give the property to that institution, not to bestow

the property on an intervening owner who will charge rent for as long as the institution exists. The trial court accorded substantial weight to the provision in the agreement that Gureghian, his successors and assigns will devote the property to charter school purposes for a minimum of twenty years. In view of the fact that this is a charter school, not a municipal or even a private school, control over such use is not in Gureghian's hands. A charter once approved and signed by the board of school directors of the local school district is initially for a period of not less than three nor more than five years and may be renewed for five-year periods upon reauthorization by the local board or by the State Charter School Appeal Board. Section 1720–A of the Charter School Law, 24 P.S. § 17–1720–A.

In addition, the provision relied upon operates only for twenty years; Gureghian or any other owner at that time would be free to apply the property, taken from the original owner through eminent domain, to any permitted use. This is similar to the situation in a case cited by Justice Baer in his dissent in *In re Redevelopment Authority of Philadelphia*, namely *Tilton v. Richardson*, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (plurality opinion), where a plan to provide direct grants to religious and secular institutions for construction of academic facilities required assurances from religious beneficiaries that for twenty years the facilities would not be used for sectarian purposes. Justice Baer noted that the Justices unanimously agreed that the lack of restrictions after twenty years violated the Establishment Clause by leaving a religious institution with something of considerable value, given by the government, in which to forward religious interests.

The arrangement here is akin to that in *Tilton* inasmuch as a majority of this Court has sanctioned the Authority's actions to take property from Yarnall in derogation of his private property rights, to convey it to Gureghian for use as a profit-making rental property and then after twenty years to remove all restrictions or limitations on use of the Property for school purposes. In my view, the primary and paramount beneficiary of this taking is Gureghian, and to permit the taking to occur merely because the area in which the Property is located has been certified as blighted is to reach an unfortunate decision and one that opens the door for the "boundless use" of eminent domain power in this Commonwealth.[3] The decision by the majority forecloses any inquiry by the private property owner or by the courts into the question of whether the transfer of private property is for a "true" public purpose. Moreover, the decision conflicts with settled case law and flies in the face of the principle recently reiterated in *Middletown Township*. More fundamentally, "[t]he specter of condemnation [now] hangs over all property." *Kelo*, 545 U.S. at 503, 125 S.Ct. at 2676, 162 L.Ed.2d at 466 (Justice O'Connor dissenting).

Judge COHN JUBELIRER joins in the dissent.

---

3. I note Section 204(a) of the new Eminent Domain Code, 26 Pa.C.S. § 204(a), which provides: "**Prohibition.**—Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited." Although not applicable here because of its enactment after the controversy arose and after the decision in *Kelo*, it is worth noting that the statute reflects legislative intent to preclude exercise of eminent domain power to take one's private property for another's gain.