IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco : <br>
Pipeline L.P. of Permanent and : <br>
Temporary Rights of Way for the : <br>
Transportation of Ethane, Propane, : <br>
Liquid Petroleum Gas, and other : <br>
Petroleum Products in Edgemont : <br>
Township, Delaware County, : <br>
Pennsylvania, over the Lands of : <br>
Charles S. Katz, Jr. and Karen M. : <br>
Katz : <br>
    : <br>
Appeal of: Charles S. Katz, Jr. and : No. 1747 C.D. 2016 <br>
Karen M. Katz : Argued: May 2, 2017

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge <br>
                HONORABLE ANNE E. COVEY, Judge <br>
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY <br>
SENIOR JUDGE PELLEGRINI          FILED: July 3, 2017

Charles S. Katz, Jr. and Karen M. Katz (Condemnees) appeal from the order of the Court of Common Pleas of Delaware County (trial court) overruling all of their preliminary objections to the declaration of taking filed by Condemnor Sunoco Pipeline, L.P. (Sunoco), which seeks to condemn easements on Condemnees' property to facilitate construction of the phase of Sunoco's Mariner East Project known as the Mariner East 2 pipeline.

# I.

To better understand the matter before us, a short review of takings law and a public utility corporation's authority to take private property is in order.

# A.

The United States and Pennsylvania Constitutions provide that private property can only be taken from a property owner to serve a "public use." The Fifth Amendment to the United States Constitution provides, in relevant part, "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Echoing this language, Article I, Section 10 of the Pennsylvania Constitution provides, "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Article X, Section 4 of the Pennsylvania Constitution, which vests corporations with the power of eminent domain, also limits the power to the "taking [of] private property for public use. . . ."[1] Our Supreme Court has held:

> . . . [T]he only means of validly overcoming the private right of property ownership . . . is to take for 'public use.' In other words, without a public purpose, there is no authority to take property from private owners.

---

[1] Article X, Section 4 of the Pennsylvania Constitution provides that "Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction."

> According to our Court, "a taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise." *In re Bruce Ave.*, 266 A.2d 96, 99 (Pa. 1970). In considering whether a primary public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking. *Belovsky v. Redevelopment Authority*, 54 A.2d 277, 283 (Pa. 1947). Stated otherwise, the **true** purpose must primarily benefit the public. . . .

*Middletown Township v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007) (emphasis in original).[2] Private property cannot be taken for private use, not even under the authorization of the Legislature. *Ormsby Land Company v. City of Pittsburgh*, 119 A. 730 (Pa. 1923).

**B.**

Public utility corporations are the types of corporations referred to in Article X, Section 4 of the Pennsylvania Constitution that can be vested with the power of eminent domain if it is exercised for a public purpose. Jurisdiction over the certification and regulation of public utilities in the Commonwealth is vested in the Public Utility Commission (PUC). The Public Utility Code (Code)[3] defines a "Public utility" as "Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for: . . . Transporting or

---

[2] As apparent from our Supreme Court's quoted language in *Lands of Stone*, the terms "public use" and "public purpose" have been used interchangeably in the context of eminent domain matters.

[3] 66 Pa.C.S. §§ 101–3316.

conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation." 66 Pa.C.S. § 102(1)(v).

Simply being subject to PUC regulation, however, is insufficient for an entity to acquire the power of eminent domain. Pursuant to Section 1104 of the Code, 66 Pa.C.S. § 1104, a public utility must also possess a certificate of public convenience (CPC) issued by the PUC pursuant to Section 1101 of the Code, 66 Pa.C.S. § 1101.[4] To obtain a CPC, a public utility is required to submit a written

---

[4] Section 1101 of the Code provides:

> Upon the application of any proposed public utility and the approval of such application by the commission evidenced by its certificate of public convenience first had and obtained, it shall be lawful for any such proposed public utility to begin to offer, render, furnish, or supply service within this Commonwealth. The commission's certificate of public convenience granted under the authority of this section shall include a description of the nature of the service and of the territory in which it may be offered, rendered, furnished or supplied.

66 Pa.C.S. § 1101. Similarly, Section 1102 of the Code provides, in part:

> (a) General rule.—Upon the application of any public utility and the approval of such application by the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, it shall be lawful:
>
> (1) For any public utility to begin to offer, render, furnish or supply within this Commonwealth service of a different nature or to a different territory. . . .

66 Pa.C.S. § 1102(a)(1).

4

application to the PUC, after which "A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." Section 1103(a) of the Code, 66 Pa.C.S. § 1103(a).

While the power of eminent domain is conferred on a public utility via a CPC, an entity's authorization to implement its taking power is contained in Section 1511(a) of the Business Corporation Law of 1988 (BCL), 15 Pa.C.S. § 1511(a). While that provision lists a number of services for which private property can be taken, pertinent, here, is the provision that a "public utility corporation"[5] can take private property for "The transportation of artificial or natural gas, electricity, petroleum or petroleum products or water or any combination of such substances for the public." 15 Pa.C.S. § 1511(a)(2).[6]

The procedure for a public utility to exercise the power of eminent domain is set forth under Section 1511(c) of the BCL, 15 Pa.C.S. § 1511(c).[7] It

_____

[5] The BCL defines a "public utility corporation" as "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] or an officer or agency of the United States. . . ." 15 Pa.C.S. § 1103.

[6] Section 1511(b) of the BCL provides that the power of eminent domain granted to public utility corporations for purposes of constructing petroleum or petroleum products transportation cannot be exercised within "any part of the reasonable curtilage of a dwelling house within 100 meters therefrom." 15 Pa.C.S. § 1511(b). No such restriction exists on the transportation of artificial or natural gas.

[7] Section 1511(c) of the BCL, 15 Pa.C.S. § 1511(c), provides:

**(Footnote continued on next page…)**

5

provides, in pertinent part, that before a public utility can construct a pipeline for artificial or natural gas and/or petroleum or petroleum products, that "the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public. The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission. . . ." 15 Pa.C.S. § 1511(c).

## C.

Once the PUC approves a CPC, the public utility corporation can begin taking private property by filing a declaration of taking. For a property

---

**(continued…)**

> The powers conferred by subsection (a) may be exercised to condemn property outside the limits of any street, highway, water or other public way or place for the purpose of erecting poles or running wires or other aerial electric, intrastate aerial telephone or intrastate aerial telegraph facilities only after the Pennsylvania Public Utility Commission, upon application of the public utility corporation, has found and determined, after notice and opportunity for hearing, that the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public. The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held under this subsection, and no court shall entertain any proceeding questioning the jurisdiction of the commission under this subsection. A final order of the commission approving or denying an application under this subsection, including an order involving a question of jurisdiction under this subsection, may be made the subject of any appeal in the manner provided or prescribed by law.

owner to challenge the taking, Section 306(a)(3) of the Eminent Domain Code provides, in relevant part:

> (3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:
>
> (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
>
> (ii) The sufficiency of the security.
>
> (iii) The declaration of taking.
>
> (iv) Any other procedure followed by the condemnor.

26 Pa.C.S. § 306(a)(3).

While the Rules of Civil Procedure have occasionally been applied in an "instructive" manner, this Court has repeatedly held that they are not applicable to eminent domain proceedings. *Gilyard v. Redevelopment Authority of Philadelphia*, 780 A.2d 793, 794 (Pa. Cmwlth. 2001). This is because in eminent domain cases, preliminary objections serve a somewhat broader purpose and are intended as a procedure to resolve expeditiously the threshold factual and legal challenges to a declaration of taking, without awaiting further proceedings. *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates*, 674 A.2d 1204, 1207 (Pa. Cmwlth. 1996).

We now turn to the facts of this case.

7

## II.

On February 24, 2016, Sunoco filed a declaration of taking pursuant to Section 302 of the Eminent Domain Code, 26 Pa.C.S. § 302, and Section 1511 of the BCL, 15 Pa.C.S. § 1511, seeking to condemn a 0.08 acre permanent pipeline easement and a 0.10 acre temporary workspace easement on Condemnees' property situate at 1487 Heather Hills Lane in Glen Mills, Edgmont[8] Township, Delaware County, Pennsylvania (property). As stated in the declaration, the purpose of this taking is "to construct a portion of the 'Mariner East 2' pipeline project." (Declaration of Taking at 2.) The property is encumbered by a bridle path easement. Sunoco gave notice only to Condemnees of the filing of the declaration of taking.

Condemnees filed preliminary objections contending, in relevant part,[9] that Sunoco is not able to exercise eminent domain powers because: it is not a public utility corporation; it requires a CPC for the Mariner East 2 pipeline; and the Mariner East 2 pipeline's primary and paramount purpose is not intrastate, does not provide a public benefit, and is not necessary to meet public needs. Condemnees also filed an objection contending that Sunoco's notice of taking was defective because it failed to notify the entire Edgmont Township community of the condemnation.

---

[8] While the name of the township is spelled "Edgemont" in the caption, it appears that the correct spelling is Edgmont.

[9] On appeal, Condemnees do not raise objections to the sufficiency of the $7,000 security bond Sunoco posted to cover the costs of damages resulting from appropriation of its interest in the property or that the declaration of taking is barred by collateral estoppel.

## III.

Before the trial court decided Condemnees' preliminary objections, this Court, on July 14, 2016, decided *In re Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth. 2016), *appeal denied In re Condemnation By Sunoco Pipeline, L.P. of Permanent*, ___ A.3d ___ (Pa. No. 571-573 MAL 2016, filed Dec. 29, 2016). While *In re Sunoco Pipeline* involved different condemnees and property, the issues and responses by both parties in that case are essentially identical to those raised in the instant appeal.[10]

---

[10] We summarized the issues raised in *In re Sunoco Pipeline* as follows:

> All Condemnees objected: that Sunoco lacked the power or the right to condemn their land as Sunoco was not a public utility regulated by [Pennsylvania Public Utility Commission (PUC)] for the Mariner East 2 pipeline; that Sunoco's corporate resolution authorized takings only for an interstate pipeline and not an intrastate pipeline; that the declarations were barred by collateral estoppel on the basis of the York County decision; that the Mariner East 2 pipeline was an interstate pipeline and not an intrastate pipeline; that the Declarations sought to condemn their properties for two pipelines while the agency Condemnees assert has sole jurisdiction, [Federal Energy Regulatory Commission (FERC)], approved only one pipeline; that Sunoco lacked the FERC Certificate of Public Convenience and Necessity (Certificate) necessary to exercise eminent domain power for the pipeline; and that Sunoco's proposed bond amounts were insufficient.
>
> Sunoco filed responses to Condemnees' Preliminary Objections that were, like the objections, essentially uniform. With regard to the corresponding objections referenced in the preceding paragraph, Sunoco asserted: that PUC recognizes that, the fact that Sunoco has FERC authorization to make interstate movements on Mariner East notwithstanding, Sunoco also has authority under state law to provide intrastate service as a public utility regulated by PUC; that the corporate resolution attached to the Declarations is not defective in any way; that the identical issue of whether

**(Footnote continued on next page…)**

9

In that case, we were tasked with determining, *inter alia*, whether Sunoco is regulated as a public utility corporation empowered to exercise eminent domain for the Mariner East 2 pipeline and whether the Mariner East 2 pipeline constitutes an intrastate service that is covered by Sunoco's CPCs. In answering that question, we set forth an in-depth discussion of Sunoco and its Mariner East Project.[11]

---

**(continued…)**

> Sunoco has the power of eminent domain to condemn for the Mariner East 2 pipeline was not decided previously in the York County decision [*Sunoco Pipeline, L.P. v. Loper*, 2013-SU-4518-05 (C.P. York, February 24, 2014) (*reaffirmed* March 25, 2014)]; that the Mariner East 2 pipeline is regulated by both PUC and by FERC; that FERC's regulation of interstate shipments on Mariner East 2 pipeline is inapplicable to a determination of Sunoco's eminent domain authority as a Pennsylvania-regulated public utility; that a FERC Certificate is not the only method by which a public utility can obtain eminent domain power in Pennsylvania where state law provides eminent domain authority both to utilities regulated by PUC and to utilities regulated by an officer or agency of the United States, such as FERC; and that the bonds posted by Sunoco were adequate.

*In re Sunoco Pipeline*, 143 A.3d at 1011-12.

[11] As we explained in *In re Sunoco Pipeline*, in 2012, Sunoco announced its intent to develop an integrated pipeline system known as the "Mariner East Project" for the purpose of transporting petroleum products and natural gas liquids (NGLs) from the Marcellus and Utica Shales through and within the Commonwealth, which require using pipeline and terminal infrastructure within the Commonwealth. 143 A.3d at 1008. The Mariner East Project has two phases: Mariner East 1, which has been completed and utilizes Sunoco's existing pipeline infrastructure; and the second phase known as "Mariner East 2," which requires construction of a new pipeline largely tracing the Mariner East 1 pipeline route. Sunoco's existing CPCs provide it authority "to transport petroleum products and refined petroleum products, including propane, between Delmont, Westmoreland County, and Twin Oaks, **Delaware County**." *Id.* at 1007 (emphasis added). A PUC order dated August 21, 2014, authorized Sunoco to expand its intrastate service to Washington County and the "result of this Order is that PUC authorized **(Footnote continued on next page…)**

10

We concluded that Sunoco's CPCs apply to "**both** Mariner East 1 service **and to Mariner East 2 service,** as it is an authorized expansion of the same service." *Id.* at 1016-1017 (emphasis in original). We further concluded that Sunoco is regulated as a public utility by the PUC and is a public utility corporation empowered to exercise eminent domain, and Mariner East intrastate service is a public utility service rendered by Sunoco within the meaning of the BCL, 15 Pa.C.S. §§ 1103, 1511.

Because the condemnees in *In re Sunoco Pipeline* also challenged the necessity and nature of the Mariner East 2 service, this Court was further tasked with deciding whether a party may collaterally challenge the PUC's determination to issue a CPC in the context of an eminent domain proceeding. Here, we held that "The Eminent Domain Code does not permit common pleas to review the **public need** for a proposed service by a public utility that has been authorized by PUC through the issuance of a CPC." 143 A.3d at 1018 (emphasis added). Accordingly, because "Sunoco here holds CPCs issued by PUC and PUC in its Orders issuing the CPCs found the authorized service to be necessary and proper, it is left to common pleas to evaluate the scope and validity of the easement, but not the public need." *Id.* at 1019. As we explained:

---

**(continued…)**

Mariner East 1 and Mariner East 2 intrastate service in 17 counties, from Washington County in western Pennsylvania, through 15 other counties, including Cumberland County, to **Delaware County** in eastern Pennsylvania." *Id.* at 1015 (emphasis added).

11

> [D]eterminations of public need for a proposed utility service are made by PUC, not the courts. Section 1103 of the Code requires an applicant for a CPC to establish that the proposed service is "necessary or proper for the service, accommodation, convenience, or safety of the public." 66 Pa.C.S. § 1103(a). Under this section, the applicant must "demonstrate a **public need or demand for the proposed service**. . . ." *Chester Water Authority v. Public Utility Commission,* 868 A.2d 384, 386 (Pa. 2005) (emphasis added).
>
> * * *
>
> Here, both PUC and common pleas followed their statutory mandates and evaluated the issues within their respective purviews. There is no basis for a common pleas court to review a PUC determination of public need. In fact, to allow such review would permit collateral attacks on PUC decisions and be contrary to Section 763 of the Judicial Code, 42 Pa.C.S. § 763, which places review of PUC decisions within the jurisdiction of this Court.

*In re Sunoco Pipeline*, 143 A.3d at 1019 (emphasis in original).

## IV.

Soon after we decided *In re Sunoco Pipeline*, Condemnees requested a hearing to obtain evidence and testimony with respect to factual issues raised by their preliminary objections. Without a hearing, the trial court denied Condemnees' preliminary objections.

Echoing the findings and conclusions made by this Court in *In re Sunoco Pipeline*, the trial court found, in pertinent part: Sunoco is a public utility regulated by the PUC that has the power of eminent domain; the Mariner East 2

pipeline is included in Sunoco's CPC and provides intra- and interstate pipeline services; and the public need for the Mariner East 2 service is conclusively determined by the issuance of the CPC. The trial court also found that Sunoco complied with all requirements of the Eminent Domain Code in filing the declaration and notice of taking.[12]

In response to Condemnees' contention that the trial court erred when ruling upon the preliminary objections without holding a hearing, the trial court reasoned "where issues before the court in an action under the eminent domain code are purely legal, a court may rule on preliminary objections without a hearing. . . ." (Trial Court's Opinion at 17.) Regardless, all such objections are:

> . . . included in the factual and legal matrices encompassed and ruled upon by the Commonwealth Court's Opinion in [*In re Sunoco Pipeline*]. . . . A thorough review of the Commonwealth Court's analysis and *ratio decidendi* for upholding the overruling of identical preliminary objections . . . will illustrate why this Court's overruling of the Condemnees' Preliminary Objections must not be reversed on appeal.

---

[12] In their Concise Statement of Issues Raised on Appeal and in their Brief, Condemnees contend that the "PUC should have notified the affected public of any proceedings before the PUC and permitted a public hearing on the subject of [the Mariner East 2] service." (Condemnees' Brief at ii.) However, "All preliminary objections shall be raised at one time and in one pleading." 26 Pa.C.S. § 306(d). "Failure to raise by preliminary objections . . . shall constitute a waiver. Issues of compensation may not be raised by preliminary objections." 26 Pa.C.S. § 306(b). Accordingly, the trial court correctly determined that this issue is waived.

(Trial Court's Opinion at 18) (citations omitted). This appeal by Condemnees followed.[13]

## V.

## A.

On appeal, Condemnees reassert various contentions that essentially challenge Sunoco's status as a public utility and its authority to condemn property for purposes of the Mariner East 2 pipeline. While acknowledging that we held in *In re Sunoco Pipeline* that a property owner cannot challenge the PUC's determination of "public need" for a service, Condemnees contend that it does not follow that a property owner is unable to challenge whether a specific taking purportedly made for that service carries out a public purpose.

We agree with Condemnees that in the context of eminent domain proceedings, a property owner may challenge a specific taking on the basis that it fails to carry out a public purpose. As an example, if the PUC would have found that there was a "public need" for a private pipeline to be built between two Sunoco plants or a pipeline to cross the state for only Sunoco products, while a property owner could not challenge that need, the owner could still challenge that a specific taking is unconstitutional because it is for a private purpose. That challenge does not go to the need, but whether the specific takings carried out for

---

[13] In an eminent domain case disposed of on preliminary objections, this Court is limited to determining if the trial court's necessary findings of fact are supported by competent evidence and if an error of law or an abuse of discretion was committed. *Stark v. Equitable Gas Co., LLC*, 116 A.3d 760, 765 n.8 (Pa. Cmwlth. 2015).

14

that need serve a public, constitutional purpose. Moreover, that challenge is not precluded on the basis that it was decided before the PUC when issuing the CPC. When issuing a CPC, the PUC is only tasked with determining whether the proposed service is "necessary or proper for the service, accommodation, convenience, or safety of the public." Section 1103(a) of the Code, 66 Pa.C.S. § 1103(a). The PUC's determination does not require an evaluation of the specific taking of private property, which may remain unknown at the time of approval. This is especially likely considering that it is not until a declaration of taking is filed that a property owner is aggrieved and may challenge the constitutional basis of a taking. In any event, that issue was not even decided before the PUC when issuing CPCs to Sunoco because the "power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission. . . ." 15 Pa.C.S. § 1511(c).

Notwithstanding the above, the arguments that Condemnees raise do not go to whether the taking was for a public purpose. Condemnees contend that Sunoco's taking does not serve a public need and that the primary and paramount purpose of the Mariner East 2 pipeline is not intrastate. They go on to assert that *In re Sunoco Pipeline* "is silent concerning whether [the Mariner East 2 pipeline] is actually necessary to satisfy the Pennsylvania intrastate demand . . . or whether the existing repurposed [Mariner East 1] pipeline is sufficient to satisfy demand within the Commonwealth without an excessive taking for non-public purposes." (Condemnees' Brief at 13.) Condemnees also contend that the Mariner East 2 pipeline service is not within the scope of Sunoco's existing CPCs.

15

All of the above issues were resolved in *In re Sunoco Pipeline*. In that case, we explicitly held that Sunoco is a public utility corporation, Mariner East 2 constitutes an intrastate service and falls within Sunoco's CPC, and Sunoco has the power of eminent domain with regard to the Mariner East 2 pipeline. We also held that in the context of eminent domain proceedings such as this, a court is not permitted to review "collateral attacks on PUC decisions" with regard to the public need or necessity of a service carried out under authority of a CPC. *In re Sunoco Pipeline*, 143 A.3d at 1019.

**B.**

Condemnees also contend that the trial court erred when denying them a hearing on the issue of whether Sunoco's condemnation constitutes an excessive taking. However, Condemnees admit that they only seek "to demonstrate to the Court through evidence that the taking for [Mariner East 2] is excessive, since [Mariner East 1], as repurposed, already meets the intrastate need for propane shipment." (Condemnees' Brief at 15.) They do not challenge the scope of the specific taking under the declaration. Accordingly, this is just another collateral attack seeking to demonstrate that the Mariner East 2 service does not actually serve a public need or is not necessary.

**C.**

Finally, because their property is subject to a preexisting bridle path easement, Condemnees object that Sunoco's notice of taking was defective because it failed to notify the entire Edgmont Township community of the condemnation. Likely because they would otherwise not be aggrieved by this

16

alleged notice deficiency, Condemnees contend they have standing to raise this issue because their property deed provides that they must warrant and defend all property rights, including the preexisting bridle easement. Even assuming this contention is true – because Condemnees would otherwise lack standing to assert this issue – Sunoco's notice was not deficient because it provided notice to the only party tasked with warranting and defending the alleged and unrecorded bridle path easement.

Accordingly, for the foregoing reasons, the trial court's order is affirmed.[14]

_____
DAN PELLEGRINI, Senior Judge

Judge Wojcik did not participate in the decision in this case.

---

[14] Condemnees make allusions to this Court's decision in *Robinson Township v. Commonwealth*, 96 A.3d 1104 (Pa. Cmwlth. 2014), *rev'd Robinson Township v. Commonwealth*, 147 A.3d 536 (Pa. 2016), presumably for the purpose of questioning the validity of *In re Sunoco*. However, because this mere allusion can, at best, be construed as an extremely undeveloped argument, the issue is waived. *See City of Philadelphia v. Berman*, 863 A.2d 156, 161 (Pa. Cmwlth. 2004).

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco : 
Pipeline L.P. of Permanent and : 
Temporary Rights of Way for the : 
Transportation of Ethane, Propane, : 
Liquid Petroleum Gas, and other : 
Petroleum Products in Edgemont : 
Township, Delaware County, : 
Pennsylvania, over the Lands of : 
Charles S. Katz, Jr. and Karen M. : 
Katz : 
: 
Appeal of: Charles S. Katz, Jr. and : No. 1747 C.D. 2016
Karen M. Katz :

# **O R D E R**

AND NOW, this 3rd day of July, 2017, the order of the Court of Common Pleas of Delaware County dated September 26, 2016, is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco          :
Pipeline L.P. of Permanent and         :
Temporary Rights of Way for the        :
Transportation of Ethane, Propane,     :    No.  1747 C.D. 2016
Liquid Petroleum Gas, and other        :
Petroleum Products in Edgemont         :    Argued:  May 2, 2017
Township, Delaware County,             :
Pennsylvania, over the Lands of        :
Charles S. Katz, Jr. and Karen M.      :
Katz                                   :
                                       :
Appeal of:  Charles S. Katz, Jr. and   :
Karen M. Katz                          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


CONCURRING OPINION
BY JUDGE McCULLOUGH                          FILED:  July 3, 2017



At least three commissioned judges of this Court have questioned

whether Sunoco Pipeline, L.P. (Sunoco) has the legal authority to condemn private

property for the "Mariner East 2" or "ME2" pipeline project.[1,2]

---

[1] "The power of eminent domain, next to that of conscription of man power for war, is the most awesome grant of power under the law of the land." *Winger v. Aires*, 89 A.2d 521, 522 (Pa. 1952). "The exercise of the right of eminent domain, whether directly by the state or its authorized grantee, is necessarily in derogation of private right," *id.* at 523, that is, "a private citizen's right to hold property," *Olson v. Whitpain Township*, 595 A.2d 706, 708 (Pa. Cmwlth.
**(Footnote continued on next page…)**

In this latest matter surrounding Sunoco's undertaking, I am constrained to concur in the result reached by the Majority because *In re Sunoco Pipeline, L.P.,* 143 A.3d 1000 (Pa. Cmwlth. 2016) (en banc), *appeal denied*, ___ A.3d ___ (Pa., No. 571 MAL 2016, filed December 29, 2016), controls the outcome of this matter. I, however, remain steadfast to my dissenting opinion in that case, wherein I expressed the view that Sunoco failed to obtain the requisite certificate of public convenience (CPC) from the Public Utility Commission (PUC) and therefore lacked the statutory authorization necessary to condemn private property under Section 1104 of the Public Utility Code. 66 Pa.C.S. §1104.[3] From

---

**(continued…)**

1991), and Article 1, Section 10 of our Constitution prohibits the taking of property "without authority of law." PA. CONST. art. 1, §10. As such, any statutory authority or procedure prescribed by the Legislature to condemn property must be strictly construed and strictly followed. *Olson*, 595 A.2d at 708.

[2] *See, e.g., In re Sunoco Pipeline, L.P.,* 143 A.3d 1000, 1020-28 (Pa. Cmwlth. 2016) (en banc), *appeal denied*, ___ A.3d ___ (Pa., No. 571 MAL 2016, filed December 29, 2016) (Brobson, J., dissenting); *id.* at 2028-29 (McCullough, J., dissenting); *In Re: Condemnation by Sunoco Pipeline L.P.*, (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017), Dissent slip op. at 1-3 (Cosgrove, J., dissenting).

[3] In pertinent part, this provision states that "no domestic public utility . . . authorized to do business in this Commonwealth shall exercise any power of eminent domain within this Commonwealth until it shall have received the certificate of public convenience . . . ." 66 Pa.C.S. §1104; *see Duquesne Light Company v. Upper St. Clair Township*, 105 A.2d 287, 293 (Pa. 1954) ("The function of the Commission . . . is to determine whether the exercise of the right of eminent domain is necessary or proper for the service, accommodation, convenience or safety of the public. If the Commission determines that it is, it issues a certificate of public convenience."). In *In re Sunoco Pipeline, L.P.,* I stated: "As can be gleaned from the Majority's
**(Footnote continued on next page…)**

a dissenting posture, I recommended that should Sunoco "desire to pursue this matter further," it should not "bypass the PUC," but instead, should "obtain, in the first instance, the proper authority from the PUC to exercise eminent domain powers with respect to ME2 before it targets private property within the Commonwealth and seeks to deprive Commonwealth citizens of their fundamental right to own the same." *In re Sunoco Pipeline, L.P.,* 143 A.3d at 1029 (McCullough, J., dissenting). To date, Sunoco has not secured an appropriate CPC and it is my renewed belief that Sunoco continues to take private property without lawful authority.

While I still adhere to my dissenting opinion in *In re Sunoco Pipeline, L.P.,* the Majority's decision in that case constitutes binding precedent and compels the result in this case. Hence, I concur only in the result.

_____
PATRICIA A. McCULLOUGH, Judge

---

**(continued…)**

opinion, Sunoco has cobbled together various CPCs since the 1930's [sic], but never sought a CPC or any other PUC approval granting it the ability to exercise eminent domain within the Commonwealth. Most certainly, Sunoco never sought authority to exercise eminent domain as to ME2." 143 A.3d at 1029 (McCullough, J., dissenting).