## Golden Dawn Shops, Inc. *v.* Philadelphia Redevelopment Authority.

Argued September 9, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Edward L. Snitzer,* with him *Paul L. Jaffe, Mesirov, Gelman, Jaffe & Levin,* for appellant.

*Nathan L. Posner,* with him *James W. Greenlee* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY JUDGE ROGERS, October 8, 1971:

The Redevelopment Authority of the City of Philadelphia (Authority) filed its declaration of taking of a number of properties in the City of Philadelphia, including premises 1232-40 Market Street which the appellant, Golden Dawn, Inc., occupies as a tenant. The Declaration was authorized by a resolution of the Authority, attached as an exhibit to the Declaration and not here challenged, which recited that Authority had been authorized by Ordinance of City Council to proceed with the redevelopment of an area known as the Market Street East Urban Renewal Area and that the power of eminent domain was conferred by Section 12 of the Urban Redevelopment Law, Act of May 24, 1945, P. L. 991, 35 P.S. 1701. The said Ordinance of City Council, also not here challenged, contains a metes and bounds description of the Market Street East Urban Renewal Area. This area is characterized in the Declaration as blighted and as subject to replanning and redevelopment for commercial, public and other new uses as provided in the proposal and plan approved by City Ordinance. The premises 1232-40 Market Street is within the Market Street East Urban Renewal Area. Also attached to the Declaration was Authority's bond without surety conditioned for the payment of damages to the owners of the properties condemned.

The appellant filed preliminary objections to the taking pursuant to Section 406 of the Eminent Domain Code, Act of 1964, June 22, P. L. 84, 26 P.S. 1-201, as follows:

I. That an area called Parcel 2 described in the Declaration, containing 1.8469 acres and including 1232-40 Market Street, sought to be condemned, is not blighted and has never been designated by any governmental agency as blighted.

II. That the purpose of the condemnation was not, as expressed in the complaint, to replan a blighted area but that the purpose was to acquire commercial land for development by certain private business corporations.

III. That the bond of the Authority did not secure just compensation but is in fact inadequate, insufficient and valueless.

Almost four months after appellant's preliminary objections were filed, the Authority filed preliminary objections to appellant's preliminary objections requesting an order of dismissal. The court below dismissed appellant's preliminary objections apparently on the ground that they lacked specificity. It is from this order that the instant appeal is taken.

Appellant argues that the issues raised by their Section 406 preliminary objections were factual, that it should have been permitted to produce evidence in support thereof, that it was entitled to a judicial determination of its assertions of lack of power to condemn and insufficiency of the security and that assuming that its pleading lacking specificity, it should have been permitted to amend. The appellant advances the subsidiary argument that the Authority's preliminary objections should be dismissed because the Eminent Domain Code does not provide this pleading as a means of attacking Section 406 preliminary objections. Section 406 limits preliminary objections to challenges of the power or right of condemnation, the sufficiency of the security, the procedure followed by the condemnor or the declaration of taking. The Act plainly implies that there should be some means of speedy disposition

of preliminary objections raising matters beyond those limitations or otherwise lacking merit. Although the Authority's pleading is called preliminary objections, its prayer is for dismissal of the appellant's objections. Essentially, it places in issue the legal sufficiency of appellant's preliminary objections. Since this is an issue which the condemnor is entitled to raise, we deem it immaterial that this particular pleading was titled preliminary objections.

Appellant's objection based upon the assertion that a small area, called Parcel 2 in the Declaration, is not and has not been designated blighted was properly dismissed by the court below. A careful examination of the Declaration discloses that the blighted area is referred as "described in Exhibit 'A'." That Exhibit is the resolution of the Authority which recites that the Authority is about to proceed with the redevelopment of the Market Street East Urban Renewal Area, and that it is necessary to acquire title to land in *that* area. A description of that area is contained in City Council's Ordinance of September 16, 1969 to which specific reference is made in the Authority's resolution. That description, as previously noted, is of a large area including Parcel 2. Appellant's denial that Parcel 2 is blighted does not raise the issue of the power of the Authority to condemn the larger area of which it is a part. As Mr. Justice O'BRIEN wrote in *Crawford v. Redevelopment Authority,* 418 Pa. 549, 554, 211 A. 2d 866, 868 (1965),

"The power of discretion over what areas are to be considered blighted is solely within the power of the Authority. The only function of the courts in this matter is to see that the Authority has acted not in bad faith; to see that the Authority has not acted arbitrarily; to see that the Authority has followed the statutory procedures in making its determination; and, fi-

nally, to see that the actions of the Authority do not violate any of our constitutional safeguards. . . .
. . . .

"The first issue, raised by the plaintiff, is that the Authority acted arbitrarily in including the property south of the unnamed alley in the Redevelopment Plan. In support of this contention, the plaintiff produced several real estate experts who testified that in their opinion the area south of the unnamed alley did not meet the standards for being blighted as called for in the Urban Redevelopment Law. . . .
. . . .

"These experts conceded that the area north of the unnamed alley was blighted, but that the Crawford property, which constituted a large part of the property south of the unnamed alley, was not blighted. . . . However, the entire city of Uniontown was the subject of a comprehensive study by a professional planning organization. Their conclusions were submitted to the Urban Redevelopment Board, the City Planning Commission, and the City Council, which determined that the whole area had taken on the character of blight. The legislature has decreed that blighted areas be restored to healthy and prosperous urban areas. If urban areas had been kept in the same condition as the Crawford property, there would be no need for an Urban Redevelopment Law. . . . Comprehensive planning requires that areas be considered in their entirety and not in their unseverable parts."

The averments of the Declaration relating to what area has been designated as blighted lack ideal precision. They do, however, name that area as the Market Street East Urban Renewal Area, and refer to the Ordinance of City Council where a detailed description appears. Appellant's preliminary objection asserting only that a small portion of that area including the property in which it has a leasehold interest is not blighted,

does not negative the Authority's power. The Declaration did in our view sufficiently apprise appellant, and its astute and learned counsel, that in order to attack the proceedings on the ground of absence of blight, his objection should have been directed to the condition of the Market Street East Urban Renewal Area, not Parcel 2. Appellant's counsel informs us that the Market Street East Urban Renewal Area described in the councilmanic Ordinance of September 16, 1969 is itself only a portion of a larger area designated Center City Redevelopment Area which has been certified as blighted by the Philadelphia Planning Commission, the competent body to take this action under Sections 3 (n) and (9) of the Urban Redevelopment Law, *supra,* 35 P.S. 1703 (3), 1709. *Crawford v. Redevelopment Authority, supra,* is authority for the principle that comprehensive plans of areas certified by planning commissions as blighted (here, the Center City Redevelopment Area) may, at the discretion of the Authority, be undertaken in stages, called projects (here, the Market Street East Urban Renewal Area).

Appellant's second attack on the Declaration is directed to its purpose. Appellant states that the condemnation of its land was undertaken not for the purpose of replanning a blighted area but in order to acquire "prime commercial land for development by John Wanamaker and the Philadelphia Saving Fund Society." The plain meaning of this averment is that the Authority has condemned the properties in question for a private, not public purpose. This, of course, it has no power to do. *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A. 2d 138 (1966) ; *Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 54 A. 2d 277 (1947) ; *Kramer Appeal,* 438 Pa. 498, 206 A. 2d 96 (1970). This objection raises an issue of fact from the determination of which would follow a legal conclusion as to whether the Authority had the power

to acquire this property. Section 406 provides that preliminary objections are the exclusive means of challenging the power to condemn. As there was no hearing below, it is impossible to know upon what facts, if any, the court below concluded, as it must have done, that the condemnation was for the public purpose asserted by the Authority and not the private purpose averred by the appellant. The appellant was entitled to an evidentiary hearing on this issue. *Kramer Appeal, supra; Faranda Appeal,* 420 Pa. 295, 216 A. 2d 769 (1966).

Neither should appellant's objection to the sufficiency of the security have been dismissed without inquiry into its merits. This was a proper subject of objection under Section 406 of the Eminent Domain Code. Further, by Section 403 (c), 26 P.S. 1-403 (c), the trial court is empowered to require such security as it deems proper if it appears, upon the filing of preliminary objections, that the bond is not sufficient. This Authority has no taxing power and there is no surety on its bond. *Faris Appeal,* 435 Pa. 55, 254 A. 2d 653 (1969) is dispositive of this issue. There our Supreme Court, per curiam, wrote: "The Redevelopment Authority. . . condemned appellant's property upon which the Authority filed an open-end bond. Appellants filed preliminary objections contending that, since the Authority has no power of taxation and that its financial resources were questionable, the bond filed was of insufficient security. The trial judge dismissed the preliminary objections without requiring an answer or holding a hearing. In so doing we feel that the lower court abused its discretion since a question of fact was raised by the preliminary objections as to the sufficiency of the security. In order to make a determination on the merits of that contention, an adequate record should have been made."

Appellee argues that appellant's objections to the bond lacked specificity. We are told that a motion was

made at oral argument to amend the pleading in this respect but that the motion was denied. In any event, while general, the averment that the bond was "inadequate, insufficient and valueless" coupled with the undisputable facts that the Authority has no taxing power and the bond no surety was sufficient to raise the issue. The court below should have made a determination of the sufficiency of the Authority's bond based upon an adequate record.

The Authority has insistently urged upon us as reasons for affirmance of the lower court's order, the magnitude and public importance of the project, the assertedly minor interest of the appellant as tenant of one of the many properties condemned, the vast increase of costs occasioned by delay of the project by this litigation, and the known affluence of the Authority. These conditions may, and we are inclined to believe do, here exist. They are, however, occasions for making bad law, rather than justifications for ignoring appellant's right to a proper determination of its preliminary objections. We have attempted to dispose of this appeal promptly and direct the court below to act with expedition to hear and decide the remaining issues; to wit, whether the condemnation of 1232-40 Market Street was for essentially public or private purposes, and whether the bond filed herein was sufficient security for appellant's damages.

Order modified and as modified affirmed; the record is remanded for proceedings consistent with this opinion.

---

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

Since I agree with the majority's ruling that the appellant's preliminary objections to the designation of this area as blighted should be dismissed, I must disagree with the majority's decision to remand this case

to determine whether the condemnation of 1232-40 Market Street was for essentially public or private purposes.

In *Faranda Appeal,* 420 Pa. 295, 216 A. 2d 769 (1966), the Pennsylvania Supreme Court stated that the elimination of blight in the replanning and redevelopment of these areas was a sufficiently public purpose to uphold the declaration of taking against the allegation that the taking was for private purposes. *See also Redevelopment Authority of the City of Erie v. Parties in Interest,* 1 Pa. Commonwealth Ct. 378, 274 A. 2d 244 (1971), Concurring Opinion. The purposes stated in the declaration of taking in the instant case were to "acquire and replan the blighted area. . . . The need therefor is the redevelopment of the area for commercial, public and other new uses. . . ." This is certainly a sufficiently public purpose to uphold the condemnation against appellant's preliminary objection. In *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 339, 54 A. 2d 277 (1947) it was said: "[The public purpose for this act is] the elimination and rehabilitation of blighted sections of our municipalities and that purpose certainly falls within *any* conception of 'public use' for nothing can be more beneficial to the community as a whole than the clearance and reconstruction of those sub-standard areas which are characterized by the evils described in the Urban Redevelopment Law." (emphasis in original) Today the majority upholds the Redevelopment Authority's designation but is unwilling to say that in so doing it admits the cure of the blight is the service of public purpose. To remand for further consideration a conclusion it must necessarily reach in its initial determination, is backward wheel spinning which serves no other purpose than to accommodate the private purpose of the tenant whose dilatory litigation innures to its commercial benefit. I believe that the public purpose of the taking is amply

demonstrated. Realistically, the size of the bond and the pledge of the Philadelphia City Council to make available necessary funds would seem to obviate any challenge to its sufficiency or worth. *See Tate v. Antosh,* 3 Pa. Commonwealth Ct. 144,      A. 2d (1971). And although, as I have said, I detect personal holiday profit purpose in this appeal, I am constrained to follow the mandate of *Faris Appeal,* 435 Pa. 55, 254 A. 2d 653 (1969) and join the majority's decision to remand for further hearing on the sole question of the sufficiency of the Authority's bond.

Judge MANDERINO joins in this Opinion.