## Friedman v. Redevelopment Authority of the County of Chester

*Robert S. Gawthrop, Jr.,* for plaintiffs.
*James E. McErlane,* for defendant.

SUGERMAN, *J.,* April 7, 1982—Plaintiffs have appealed to the Commonwealth Court our order overruling their preliminary objections to an amended declaration of taking filed by the Redevelopment Authority of the County of Chester (Authority). Two such preliminary objections were filed; the first attacked the action by the Planning Commission of Chester County certifying an area in the Borough of West Chester as blighted, pursuant to the Urban Redevelopment Law,[1] and the second attacked the condemnation of plaintiffs' land and building, situated within the blighted area, as constituting a condemnation of "private property for solely private purposes and not for public purposes . . ." . Plaintiffs' preliminary objections at 2.

Upon our receiving notice of plaintiffs' appeal, we directed their counsel to serve upon us a statement of matters complained of on appeal, pursuant to Pa. R.A.P. 1925(b). Counsel has served such statement upon us, raising only the overruling of the second of the two preliminary objections as the single issue on appeal, in the following language:

"The Learned Court erred in overruling plaintiffs' second preliminary objection to the Declaration of Taking in failing to find that their property was condemned for a private use, rather than for a public use."

As plaintiffs have failed to include our overruling of the first preliminary objection in their Statement, we consider the issue as abandoned: Com. v. Marcocelli, 271 Pa. Superior Ct. 411, 417, 413 A. 2d

---

1. Act of 1945, May 24, P.L. 991, §§1, et seq., as amended, 35 P.S. §1710.

732, 735 (1979), and we thus address the single issue preserved.

From the record, including the transcript of the hearing held upon plaintiffs' preliminary objections and the numerous documentary exhibits received in evidence thereat, we observe that on May 16, 1972, the Planning Commission of Chester County, in order to facilitate urban renewal of the central business district of the Borough of West Chester, certified an area in the Borough as blighted, and suitable for redevelopment, pursuant to the Urban Redevelopment Law. The Authority thereafter prepared a comprehensive redevelopment proposal for that part of the area certified as blighted, designated the Central Business Urban Redevelopment Area. Ultimately, a part of that redevelopment was designated as the West Chester Gay Street Mall Urban Renewal Project.

On the date of the certification of the redevelopment area as blighted, plaintiffs owned a tract of land within the redevelopment area, at the northwest corner of Gay and Walnut Streets in the Borough. Three buildings were erected upon plaintiffs' tract, including a vacant motion picture theatre, a garage, and a drugstore with an annexed parking lot.[2]

On October 25, 1977, the Authority filed a declaration of taking condemning that part of plaintiffs' premises upon which were erected the theatre and the garage, and on December 29, 1978, plaintiffs, as condemnees, upon payment to them by the Authority of just compensation, released all claims arising from the condemnation.

Then, on June 25, 1979, the Authority filed the

2. For the edification of the Commonwealth Court, we have annexed a plot plan of plaintiffs' tract as it existed at the date of certification.

instant declaration of taking, condemning the remainder of Plaintiffs' tract including the drugstore and parking lot. In Paragraph 4 of the declaration of taking, the Authority asserted that the purpose of the taking was to provide an access way for an existing Borough parking facility following demolition of the drugstore.

On November 7, 1979, the Authority filed an amended declaration of taking, this time asserting that the purpose of the taking was threefold: to provide off-street loading, to again provide access to the existing Borough parking facility, and "for new and expanded commercial facilities including an expansion of the present" drugstore: Amended Declaration of Taking, §4 at 2. It is to this amended declaration that plaintiffs' preliminary objection is directed.

At all times at least since April, 1973, the drugstore on plaintiffs' tract has been operated by Ronald and Stanford Zukin (Zukins), trading as Thatcher's Drug Store. The Zukins are the tenants in the premises pursuant to a lease agreement entered into between plaintiffs, as lessors, and the Zukins in March, 1973. The original term of the lease expires in May, 1983.

On February 23, 1979, following the filing of the amended declaration of taking, the Authority and the Borough entered into a "Redevelopment Agreement" with the Zukins, naming the Zukins as the redeveloper (Exhibit D-10), whereby the Authority agreed to convey the entire parcel to the Zukins, including the theatre, garage, drugstore and parking lot for a sum essentially equivalent to the just compensation paid and to be paid by the Authority to plaintiffs, together with certain incidental costs. The Zukins, in turn, as redevelopers, agreed to demolish the existing structures upon the tract and to construct a new commercial facility thereon.

Thus, in essence, the Authority proposes to condemn plaintiffs' tract and convey it to plaintiff's tenants so that the tenants can erect and operate a modern pharmacy in place of the facility the tenants presently operate. This, plaintiffs contend, constitutes a condemnation for a private purpose and is thus contrary to the law.

We begin with the principle in mind that while as a general rule, private property cannot be taken by eminent domain for the sole purpose of devoting it to the private use of another, yet if it is taken for a proper public purpose, it may be permitted to revert to private ownership when the public purpose is discharged: Goodwill Industries of Central Pennsylvania, Inc. Appeal, 30 Pa. Commonwealth Ct. 273, 278, 373 A. 2d 774, 776 (1977); Moyer Eminent Domain Appeal, 22 Pa. Commonwealth Ct. 487, 490, 349 A. 2d 781, 783-84 (1976). Section 2 of the Urban Redevelopment Law, 35 P.S. §1702, defines the redevelopment of blighted areas for commercial purposes as a proper public purpose for which public funds may be expended and private property acquired by the exercise of the power of eminent domain.

The record of the hearing reveals not only that the area in which the theatre and drugstore are located is blighted, and this plaintiffs now admit, but that the buildings themselves are in an advanced state of deterioration. Clearly, the redevelopment of the blighted commercial district in which plaintiffs' premises are located is a proper public purpose for which public funds may be expended and private property acquired by the exercise of the power of eminent domain under the Urban Redevelopment Law, and our examination of the record reveals no evidence that plaintiffs' premises have been condemned for other than the public purpose of im-

proving the blighted central business district of the Borough. Compare Goodwill Industries of Central Pennsylvania, Inc. Appeal, supra.

The Commonwealth Court was faced with a challenge quite similar to ours in In Re Franklin Town Project Philadelphia, 19 Pa. Commonwealth Ct. 272, 339 A. 2d 885 (1975). Inasmuch as we find Franklin Town and Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 54 A. 2d 277 (1954), the case upon which it relies, as dispositive, we quote at length from the former:

It is hornbook in Pennsylvania law that an authority may not condemn lands for private purposes. Kramer Appeal, 438 Pa. 498, 266 A. 2d 96 (1970); Price v. Philadelphia Parking Authority, 422 Pa. 317, 221 A. 2d 138 (1966); Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 54 A. 2d 277 (1954); Golden Dawn Shops, Inc. v. Philadelphia Redevelopment Authority, 3 Pa. Commonwealth Ct. 314, 282 A. 2d 395 (1971).

Appellants contend . . . that the lower court's conclusion of law number 8 on the purpose of the taking is an inaccurate statement and conclusion of the law. That conclusion states:

'The present condemnation serves a public purpose of removing blight from the Franklin Town portion of the Center City Redevelopment Area.' (Emphasis added.)

Citing Golden Dawn, supra, appellants argue that if the area is certified as blighted, the consequential taking is not, of necessity, for a public purpose. Appellee counters by asserting that Belovsky v. Redevelopment Authority of Philadelphia, supra, is controlling on this issue, and neither Price v. Philadelphia Parking Authority, supra, nor Golden Dawn, supra, cited by appellants, have changed

the law of taking for a public purpose. We must agree with appellee, and also reject appellants' argument that although the individual actions taken to secure condemnation rights, proper zoning, etc. were not illegal and for a private purpose, the entirety of the plan when viewed in perspective shows taking for a private purpose.

Justice Stern, speaking for the Court in Belovsky, supra, after comparing the purposes of the Housing Authorities Law and the Urban Redevelopment Law, wrote:

'In the case of the Urban Redevelopment Law, therefore, the justification of the grant of the power of eminent domain is even clearer than in the case of the Housing Authorities Law, *there being in the present act [the Urban Redevelopment Law] only the one major purpose of the elimination and rehabilitation of the blighted sections of our municipalities, and that purpose certainly falls within any conception of "public use"* for nothing can be more beneficial to the community as a whole than the clearance and reconstruction of those substandard areas which are characterized by the evils described in the Urban Redevelopment Law.

• • •

Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public. *But plaintiff misconceives the nature and extent of the public purpose which is the object of this legislation. That purpose, as before pointed out, is not one requiring a continuing ownership of the property as it is in the case of the Housing Authorities Law in order to carry out the*

*full purpose of that act, but is directed solely to the clearance, reconstruction and rehabilitation of the blighted area, and after that is accomplished the public purpose is completely realized.* When, therefore, the need for public ownership has terminated, it is proper that the land be re-transferred to private ownership, subject only to such restrictions and controls as are necessary to effectuate the purposes of the act. It is not the object of the statute to transfer property from one individual to another; such transfers, so far as they may actually occur, are purely incidental to the accomplishment of the real or fundamental purpose.

· · ·

'Indeed, so far from it being legally objectionable that property acquired by eminent domain be resold or retransferred to private individuals after the purpose of the taking is accomplished, the law actually requires that property be taken by eminent domain only to the extent reasonably required for the purpose for which the power is exercised (Bachner v. Pittsburgh, 339 Pa. 535, 539, 15 A. 2d 363, 365) and upon cessation of the public use the public ownership is properly discontinued. *Nor does the taking lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited.*' Belovsky v. Redevelopment Authority of Philadelphia, supra, 357 Pa. at 338-41, 54 A. 2d at 282-83. (Emphasis added.)

Appellees, having conceded for purposes of this appeal, that the area in question has properly been certified as blighted, cannot prevail in their argument for, as Justice Stern held, "there [is] in the present act [Urban Redevelopment Law] only the

one major purpose of elimination and rehabilitation of blighted sections of our communities, and that purpose certainly falls within any conception of 'public use.' The short of this is that Belovsky, supra, is dispositive and incidental private gain does not vitiate the public character of the taking of blighted areas." Franklin Town, supra at 280-82, 339 A. 2d at 888-90.

Plaintiffs have failed to articulate any discrepancy or irregularity in any of the procedures or documents at bar and have failed to identify any failure on the part of any of the agencies involved to follow the Urban Redevelopment Law to the letter. Apparently plaintiffs focus only upon the identity of the redeveloper—the Zukins—and suggest that as it is the present tenant in the drugstore, we should thereby infer, without more, that the purpose underlying the project is purely private. We find no justification and no basis for such an assumption.

In the Redevelopment Agreement, the Zukins as redeveloper, agreed to cooperate fully and at every stage in the project with the Authority, and to execute all documents in conformity with the Urban Redevelopment Law as well as all other laws of the Commonwealth, necessary to accomplish the completion of the project. Obviously, the Zukins must therefore abide by all provisions of the Urban Redevelopment Law, and plaintiffs do not suggest otherwise.

As the Supreme Court said in Schenck v. Pittsburgh, 364 Pa. 31, 38, 70 A. 2d 612, 615 (1950), (quoted with approval in Oliver v. Clairton, 374 Pa. 333, 339, 98 A. 2d 47, 51 (1953)):

"It is for the Authority and the Redeveloper . . . to decide upon the terms of their contract and for the City Council to approve or reject it, and if it contains

the provisions stipulated in the Urban Redevelopment Law . . . it is not for the courts to pass upon the merits of suggestions as to how the contract might be strengthened by amendments the desirability and effectiveness of which are for the consideration solely of the agencies and governing body to which the Urban Redevelopment Law has committed that responsibility."

There is nothing in the Urban Redevelopment Law, or any other statute of which we are aware, that prohibits a redevelopment authority from appointing as the redeveloper the tenant of a building marked for redevelopment.

Finally, we must remember that a planning commission and a redevelopment authority are presumed to have performed their duties in good faith and plaintiffs' burden of proving fraud or an abuse of discretion is a heavy one: Simco Stores v. Redevelopment Authority, 455 Pa. 438, 442, 317 A. 2d 610, 613 (1974); In Re Condemnation of Premises 130 Court St., 36 Pa. Commonwealth Ct. 394, 397, 388 A. 2d 1108, 1109-10 (1978). There is not the slightest evidence in the record to permit the inference that the Authority acted in such fashion and plaintiffs point to none.

In sum, we find that there is no basis whatever upon which we might conclude that the condemnation of plaintiffs' premises was designed to accomplish a private purpose, and finding that the proceedings are not otherwise tainted or defective, we reaffirm our order dismissing plaintiffs' preliminary objections.