# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Condemnation by Sunoco | : | |
| Pipeline L.P. of Permanent and | : | |
| Temporary Rights of Way and | : | |
| Easements for the Transportation | : | |
| Of Ethane, Propane, Liquid Petroleum | : | |
| Gas, and other Petroleum Products in | : | |
| ThornburyTownship, Delaware County, | : | |
| Pennsylvania, Over the Lands of | : | |
| Traymore Investment Partners, L.P. | : | |
| | : | |
| Appeal of: Andover Homeowners' | : | No. 1780 C.D. 2016 |
| Association Inc. | : | Submitted: April 13, 2017 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                     FILED:  October 24, 2017

Andover Homeowners' Association, Inc. (Andover/Condemnee) appeals from the Delaware County Common Pleas Court's (trial court) September 26, 2016 order overruling its Preliminary Objections to Sunoco Pipeline L.P.'s (Sunoco) Declaration of Taking (Declaration).  There are four issues before this Court: (1) whether Sunoco's Mariner East 2 pipeline is needed to meet the Commonwealth's natural gas liquids (NGLs) demand; (2) whether the Public Utility Commission's (PUC) procedures unconstitutionally exclude landowners potentially impacted by Mariner East 2; (3) whether any entity is serving as trustee of the Commonwealth's natural resources for Mariner East 2; and, (4) whether the trial court abused its discretion by failing to hold excessive taking and bond sufficiency hearings.

# I. Background

On May 18, 2016, Sunoco filed the Declaration to condemn a permanent easement, temporary workspace easements, a permanent access road easement, a permanent block valve easement, and a fenced-in block valve site over 4.38 acres of Traymore Investment Partners, L.P.'s (Traymore) property in Thornbury Township (Township), Pennsylvania (Property) to construct a portion of Sunoco's Mariner East 2's pipeline project (Mariner East 2).[1]  *See* Reproduced Record (R.R.) at 2a-236a.  On June 30, 2016, the trial court approved a stipulation allowing Andover, as the Property's equitable owner, to participate as Condemnee in this matter.[2]  *See* R.R. at 1b.[3]

On July 15, 2016, Condemnee filed Preliminary Objections to the Declaration in accordance with Section 306 of the Eminent Domain Code,[4] 26 Pa.C.S. § 306, alleging: the Declaration violates Section 302 of the Eminent Domain Code, 26 Pa.C.S. § 302 (relating to contents of declarations) (Objection I); Sunoco lacks eminent domain powers for Mariner East 2 (Objection II); Sunoco is not a public utility (Objection III); Mariner East 2 does not fall within the scope of the certificates of public convenience (CPC) the PUC previously issued to Sunoco (Objection IV); new CPCs are necessary for Sunoco to exercise eminent domain rights since Mariner East 2 is a "different service" under Section 1102 of the Public Utility Code, 66 Pa.C.S. § 1102 (Objection V); new CPCs are necessary for Mariner East 2's entirely new pipelines (Objection VI); until the PUC specifically approves

---

[1] The Property is an area of open space Traymore created when it developed the Andover subdivision to satisfy the Township's open space requirements.  *See* Condemnee Br. at 13-14.

[2] Traymore holds the Property's title pending conveyance to Andover.  *See* Condemnee Br. at 13.

[3] Due to the Reproduced Record's extensive nature, Condemnee divided it into parts labeled R.R. a – R.R. k.

[4] 26 Pa.C.S. §§ 101-1106.

2

Mariner East 2, Sunoco may not exercise eminent domain power (Objection VII); Sunoco lacks the power and right to take an easement for two pipelines (Objection VIII); Sunoco's bond is insufficient (Objection IX); and, Sunoco's taking will cause Condemnee to violate the Township's open space requirements (Objection X). *See* R.R. at 2c-13c. Sunoco opposed Condemnee's Preliminary Objections.[5] *See* Certified Record (C.R.) Item 7 (Sunoco Br. in Opp. to Preliminary Objections) Condemnee filed a reply brief to Sunoco's opposition. *See* R.R. at 1d-16d.

Importantly, on July 14, 2016, this Court issued an *en banc* decision in *In re Condemnation by Sunoco Pipeline, L.P. (Appeal of Martin)*, 143 A.3d 1000 (Pa. Cmwlth. 2016), *petition for allowance of appeal denied*, (Pa. Nos. 571, 572, 573 MAL 2016, filed December 29, 2016) (*Sunoco I*),[6] wherein *Sunoco I* decided a majority of the issues Condemnee raised in its Preliminary Objections. Based on *Sunoco I*, on September 26, 2016, without a hearing, the trial court overruled Condemnee's Preliminary Objections as follows:

> 1. [Sunoco] is regulated as a public utility by the [PUC]. [*Sunoco I*].
>
> 2. The Mariner East 2 service is included within [Sunoco's] certificated public utility service.
>
> 3. Mariner East 2 provides both intrastate and interstate pipeline service.
>
> 4. [Sunoco] and the Mariner East 2 service are dually regulated by the PUC and the Federal Energy Regulatory Commission [(FERC)].
>
> 5. Neither the Interstate Commerce Act, 49 U.S.C. [§]§ [101 – 80504] (1988), nor the Hazardous Liquids Pipeline

[5] Although referenced in Condemnee's designation of the Reproduced Record's contents, and in the Reproduced Record's table of contents as Sunoco's opposition to Condemnee's Preliminary Objections, *see* R.R. at 1d-16d, what is attached is Condemnee's reply brief to Sunoco's brief opposing the Preliminary Objections.

[6] *Sunoco I* is referred to in Condemnee's brief as *Martin*.

Safety Act of 1979 ('HLPSA'), [Public Law 96-129, 93 Stat. 989,] 49 U.S.C. [§§] 2001 [- 2014], preempt[] the PUC's regulation of *intrastate* shipments on the Mariner East 2 service.

6. Section 104 of the Public Utility Code, 66 Pa.C.S. § 104, does not restrict the PUC's jurisdiction over the *intrastate* shipments on the Mariner East 2 service.

7. As a public utility providing public utility service under the Business Corporation Law [(BCL)], 15 Pa.C.S. § 1511(a), [Sunoco] has the power of eminent domain.

8. The doctrine of collateral estoppel does not apply to compel a different result.

9. The public need for the Mariner East 2 service has already been conclusively determined by the General Assembly, through enactment of the [BCL], and the PUC, through issuance of [CPCs], and [Sunoco's] taking is reasonable for the purpose of providing the Mariner East 2 service.

10. The Property Rights Protection Act, 26 Pa.C.S. §[§ 201-207], does not apply to condemnations by public utilities such as [Sunoco].

11. [Sunoco] has complied with all the requirements of the Eminent Domain Code in filing the [Declaration].

12. The bond [Sunoco] posted is adequate to secure payment of just compensation.

Condemnee Br. Ex. A, Trial Ct. Order at 1-2.

On October 7, 2016, Condemnee filed a motion for reconsideration, wherein it re-argued its Preliminary Objections, and added arguments that potentially-impacted landowners were denied due process and that Mariner East 2 may not satisfy the "primary and paramount" purpose test for takings under the Eminent Domain Code, in light of the Pennsylvania Supreme Court's September 28, 2016 decision in *Robinson Township v. Commonwealth*, 147 A.3d 536 (Pa. 2016) (*Robinson IV*). *See* R.R. at 2f-40f. Sunoco opposed the motion. *See* R.R. at 1g-14g.

4

On November 7, 2016, the trial court denied Condemnee's reconsideration motion.[7] *See* R.R. at 2h.

On October 24, 2016, Condemnee appealed to this Court.[8] *See* R.R. at 1j. On November 21, 2016, Condemnee filed its Concise Statement of Issues [sic] Complained of on Appeal. *See* R.R. at 1k-6k. On January 10, 2017, the trial court filed an opinion in support of its September 26, 2016 order, largely based upon this Court's holdings in *Sunoco I*. *See* Sunoco Br. App. D, Trial Ct. Op; *see also* R.R. at 1i-51i.

## II. Analysis

Condemnee argues herein that *Sunoco I* is inapposite to the issues now before the Court:

### A. Public Need

Condemnee argues that Sunoco's Mariner East 2 pipeline is not needed to meet the Commonwealth's NGLs demand. Specifically, Condemnee asserts that there is no public interest; that the *Sunoco I* Court did not conclude that Mariner East 2 was necessary to provide intrastate service and, since Mariner East 1's capacity is sufficient to meet stated demand, Sunoco is taking more than it needs to fulfill a public benefit.

---

[7] Notwithstanding, the trial court's order is not binding since the reconsideration motion was denied by operation of law when the trial court lost jurisdiction to change its September 26, 2016 order after the applicable 30-day appeal period expired (*i.e.*, October 25, 2016). *See* Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505 (relating to a trial court's authority to modify an order within 30 days); *see also* Pennsylvania Rule of Appellate Procedure 1701(b)(3) (relating to reconsideration requests).

[8] "In an eminent domain case disposed of on preliminary objections this Court is limited to determining if [the trial court's] necessary findings of fact are supported by competent evidence and if an error of law or an abuse of discretion was committed." *Sunoco I*, 143 A.3d at 1014 n.17.

### 1.  Regulation of Sunoco as a Public Utility

Sunoco has operated as a Pennsylvania public utility since 2002, when it received the PUC's approval for the transfer, merger, possession, and use of all assets of the Sun Pipe Line Company (Sun) and Atlantic Pipeline Corporation (Atlantic), both of which were public utilities subject to the PUC's jurisdiction. *See* R.R. at 24a-27a.  Accordingly, the PUC issued a CPC (2002 CPC) authorizing Sunoco "to transport petroleum products in the former service territory of Sun and Atlantic[,]" between Delmont, Westmoreland County, Pennsylvania and Twin Oaks, Delaware County, Pennsylvania, which includes Lebanon County.  R.R. at 28a; *see also* R.R. at 28a-31a.  In granting the 2002 CPC, the PUC declared that the transfer of assets to Sunoco "provides an affirmative public benefit" (R.R. at 29a) and that "the granting of [Sunoco's] application is necessary or proper for the service, accommodation, convenience and safety of the public."  R.R. at 24a.

### 2.  The Mariner East Project

Sunoco planned the Mariner East Project to transport NGLs,[9] such as propane, ethane, and butane within the service territory authorized by the 2002 CPC.

---

[9] According to the United States Energy Information Administration:

> [NGLs] are hydrocarbons—in the same family of molecules as natural gas and crude oil, composed exclusively of carbon and hydrogen. Ethane, propane, butane, isobutane, and pentane are all NGLs . . . NGLs are used as inputs for petrochemical plants, burned for space heat and cooking, and blended into vehicle fuel . . . .
>
> The chemical composition of these hydrocarbons is similar, yet their applications vary widely.  Ethane occupies the largest share of NGL field production. It is used almost exclusively to produce ethylene, which is then turned into plastics.  Much of the propane, by contrast, is burned for heating, although a substantial amount is used as petrochemical feedstock . . . .

*See* R.R. at 5a-6a. The Mariner East Project consists of multiple phases, and the overall goal is to relieve the oversupply of NGLs in the Marcellus and Utica Shale basins and to remedy propane shortages in Pennsylvania and the Northeast. *See* R.R. at 5a.

Sunoco initially intended the Mariner East Project to prioritize interstate service. The first phase, known as Mariner East 1, was designed to transport NGLs from the Marcellus and Utica Basins east to the Marcus Hook Industrial Complex (MHIC) located in both Delaware County and Claymont, Delaware. *See* R.R. at 6a. However, the record indicates that Sunoco also contemplated the *intrastate* transportation of propane for delivery to Pennsylvania customers. *See* R.R. at 6a. During the completion of Mariner East 1, Sunoco experienced a significant increase in demand for intrastate shipments of propane, driven by local consumer demand. *See* R.R. at 6a. The record further reflects that harsh winter conditions experienced during the 2013-14 winter season, combined with a pipeline infrastructure deficit, led to propane shortages and changing market conditions. *See* R.R. at 6a. Because of the circumstances, Sunoco accelerated its plans to provide intrastate shipments of propane, in addition to interstate shipments of propane and ethane, through the Mariner East Project. *See* R.R. at 6a.

This increased focus on intrastate shipments was the impetus for the second phase of Sunoco's Mariner East Project (Mariner East 2). *See* R.R. at 16a-17a. Mariner East 2 will consist of pipelines with access points in Ohio, West Virginia, and Pennsylvania. *See* R.R. at 16a-17a. Product will be placed into a pipeline (on-ramps), and there will be multiple exit points within Pennsylvania where product will be removed from the pipeline (off-ramps). *See* R.R. at 16a-17a. Mariner East 2 generally will run parallel to the Mariner East 1 line. *See* R.R. at 16a. The

United States Energy Information Administration, Today in Energy, April 20, 2012, available at http://www.eia.gov/todayinenergy/detail.cfm?id=5930&src=email (last visited May 20, 2016).

Mariner East Project (through Mariner East 1 and Mariner East 2) will transport petroleum products in Sunoco's certificated areas as an integrated service.[10]

### 3. PUC Orders and Tariffs

The record contains references to Sunoco initiating several PUC proceedings when its focus for the Mariner East Project moved from *interstate* to *intrastate* transportation of NGLs after the winter of 2013-14. *See* R.R. at 6a-19a. These proceedings, and the resulting PUC orders, include the following relevant actions:

- July 24, 2014 order – the PUC reaffirmed Sunoco's authority to transport petroleum products between Delmont, Westmoreland County, and Twin Oaks, Delaware County (*see* R.R. at 41a-51a);

- August 21, 2014 order – the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane from Mechanicsburg to Twin Oaks (*see* R.R. at 53a-57a);

- August 21, 2014 order – the PUC granted Sunoco a CPC authorizing it to provide intrastate transportation service of petroleum products in Washington County, which expanded the service territory in which Sunoco is

_____

[10] The PUC's August 21, 2014 Order states:

> Subject to continued shipper interest, Sunoco intends to undertake a second phase of the Mariner East [P]roject, which will expand the capacity of the project by constructing: (1) a 16[-]inch or larger pipeline, paralleling its existing pipeline from Houston, PA to the Marcus Hook Industrial Complex and along much of the same route, and (2) a new 15 miles of pipeline from Houston, PA to a point near the Pennsylvania-Ohio boundary line. This second phase, sometimes referred to as 'Mariner East 2', will increase the take-away capacity of [NGLs] from the Marcellus Shale and will enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both intrastate and interstate propane shipments.

R.R. at 61a-62a.

authorized to provide its Mariner East service (*see* R.R. at 60a-64a);

- October 29, 2014 order – the PUC reaffirmed that "Sunoco has been certificated as a public utility in Pennsylvania . . . , and the existence of [PUC o]rders granting the [CPCs] to Sunoco is *prima facie* evidence of the facts therein, including that Sunoco is a public utility under the [Public Utility] Code [(Code)[11]]."[12] (R.R. at 116a; *see also* R.R. at 77a-133a);

- January 15, 2015 order – the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane, reflecting a new origin point of Houston, Washington County (*see* R.R. at 66a-70a); and,

- March 26, 2015 order – the PUC approved a supplemental tariff for intrastate shipments from Delmont, Westmoreland County to Twin Oaks, Delaware County (*see* R.R. at 72a-75a).

*See also Sunoco I.*

The *Sunoco I* condemnees likewise argued before the Cumberland County Common Pleas Court that Sunoco failed to demonstrate a public need for the Mariner East 2 pipeline. Therein, the condemnees contended that the PUC's approval of a service is only a preliminary step, and it was the responsibility of the trial court

---

[11] 66 Pa.C.S. §§ 101-3316.

[12] Condemnee claims that Sunoco is relying on at least one non-final PUC order. *See* Condemnee Br. at 49-51. Condemnee contends throughout its brief that since Sunoco withdrew its application to bypass local zoning to construct ancillary facilities, which was the subject of the PUC's October 29, 2014 remand order (adopted October 2, 2014, but entered October 29, 2014), the PUC left open the question whether Sunoco is a public utility corporation. *See* Condemnee Br. at 10-11, 15; *see also* R.R. at 116c-168c. However, it is clear on the face of the PUC's October 29, 2014 remand order that the PUC was called upon to decide <u>only</u> "whether it is in the convenience or welfare of the public for Sunoco to enclose the planned facilities with walls and roofs, even if those enclosures may conflict with local zoning ordinances." R.R. at 95a. In making its determination, the PUC reviewed Sunoco's PUC-certificated authority and re-affirmed that Sunoco is a public utility under both the BCL and the Code. *See* R.R. at 96a, 116a. Accordingly, there is no support for Condemnee's claim that the PUC's October 29, 2014 remand order left open the question whether Sunoco is a public utility corporation.

9

in an eminent domain proceeding to review the public need and to make a determination of the scope and validity of the condemnation for the Mariner East 2 pipeline.

> As to the PUC's jurisdiction, this Court in *Sunoco I* stated:
>
> [T]he Code charges [the] PUC with responsibility to determine which entities are public utilities and to regulate how public utilities provide public utility service. This has long been the statutory mandate. *See*, *e.g.*, *Pottsville Union Traction Co. v. P[a.] Pub[.] Serv[.] Comm'n*, 67 Pa. Super. 301 (1917). It is beyond purview that the General Assembly intended [the] PUC to have statewide jurisdiction over public utilities and to foreclose local public utility regulation. *Duquesne Light Co. v. Monroeville Borough*, . . . 298 A.2d 252 ([Pa.] 1972).

*Sunoco I*, 143 A.3d at 1017. The *Sunoco I* Court expounded:

> [I]n the public utility context, an entity must meet separate but related requirements set forth in both the BCL and the Code to be a public utility corporation clothed with the power of eminent domain. Section 1511(a)(2) of the BCL provides that 'public utility corporations' may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products. Section 1103 of the BCL defines public utility corporation as '[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] . . . .' 15 Pa. C.S. § 1103. Section 1104 of the Code requires that a public utility must possess a CPC issued by [the] PUC pursuant to Section 1101 of the Code before exercising eminent domain. While courts of common pleas have jurisdiction to review whether an entity attempting to exercise eminent domain power meets the BCL criteria, that jurisdiction does not include the authority to revisit PUC adjudications. **A CPC issued by [the] PUC is prima facie evidence that [the] PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power**.

*Sunoco I*, 143 A.3d at 1017-18 (emphasis added).

10

The *Sunoco I* Court further explained:

The Eminent Domain Code does not permit common pleas to review the public need for a proposed service by a public utility that has been authorized by PUC through the issuance of a CPC. In *Fairview Water Co. v. Public Utility Comm*[*ission*], . . . 502 A.2d 162 ([Pa.] 1985), our Supreme Court discussed the proper forum for a condemnee's challenge to the legality of a taking when a public utility attempts to condemn an easement and [the] PUC has determined that condemnee's property is necessary for the utility service. The case stemmed from a dispute between Fairview and a power company over the power company's continuing use of an easement previously agreed to by the parties. *Id.* at 163. The power company filed an application with [the] PUC requesting a finding and determination that its transmission line was necessary and proper for the service, accommodation, convenience, or safety of the public. A PUC Administrative Law Judge determined that the service was necessary and proper and also determined the scope and validity of the easement. This court affirmed. On appeal, Fairview argued that [the] PUC lacked jurisdiction to determine the scope and validity of the easement. *Id.* at 163-64. The Supreme Court agreed and stated: '[o]nce there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction.' *Id.* at 167. As Sunoco here holds CPCs issued by [the] PUC and [the] PUC in its [o]rders issuing the CPCs found the authorized service to be necessary and proper, it is left to common pleas to evaluate scope and validity of the easement, but not the public need.

As illustrated by *Fairview*, determinations of public need for a proposed utility service are made by [the] PUC, not the courts. Section 1103 of the Code requires an applicant for a CPC to establish that the proposed service is 'necessary or proper for the service, accommodation, convenience, or safety of the public.' 66 Pa.C.S. § 1103(a). Under this section, the applicant must 'demonstrate a public need or demand for the proposed service . . . .' *Chester Water Auth. v. Pub*[.] *Util*[.] *Comm'n*, . . . 868 A.2d 384, 386 ([Pa.] 2005) (emphasis added).[]

11

*Sunoco I*, 143 A.3d at 1018-19 (footnote and emphasis omitted).

Specific to the PUC orders issued regarding the Mariner East Project, the *Sunoco I* Court noted that the PUC's July 24, 2014 order found that intrastate pipeline service proposed by Sunoco would result in "numerous potential public benefits" by allowing Sunoco "to immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." *Id.* at 1019. The Court further noted that in the PUC's August 21, 2014 order authorizing the provision of intrastate petroleum and refined petroleum products pipeline transportation service in Washington County, the PUC stated:

> [W]e believe that approval of this Application is **necessary and proper for the service, accommodation, and convenience of the public**. We believe granting Sunoco authority to commence **intrastate transportation of propane** in Washington County will enhance delivery options for the transport **of natural gas and** [**NGLs**] **in Pennsylvania**. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, **ensuring that Pennsylvania's citizens enjoy access to propane heating fuel**. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

*Id.* (emphasis in original).

The *Sunoco I* Court held that "there is no basis for a common pleas court to review a PUC determination of public need[,]" and that "to allow such review would permit collateral attacks on PUC decisions and be contrary to Section 763 of the Judicial Code, 42 Pa. C.S. § 763, which places review of PUC decisions within the jurisdiction of this Court." *Id.* Accordingly, this Court concluded in *Sunoco I*

12

that Sunoco holds a PUC-issued CPC for Mariner East 2, and it "is clothed with the eminent domain power." *Id.* at 1018.

Based upon this Court's ruling on this precise issue in *Sunoco I*, we find no error in the trial court's conclusion in this case that

> [t]he statutorily[-]permitted and non-waived objections listed in [Condemnee's] Concise Statement of Issues [sic] Complained of on Appeal were either addressed directly or subsumed in the findings listed in the appealed from [o]rder of this [c]ourt and would, as well, be included in the factual and legal matrices encompassed and ruled upon by the Commonwealth Court [in *Sunoco I,*] hereunto appended as Exhibit A. A thorough review of the Commonwealth Court's analysis and *ratio decidendi* for upholding the overruling of preliminary objections identical to those filed by [Condenmee] under the Eminent Domain Code, 26 Pa. C.S.[] § 306(a), will illustrate why this [c]ourt's overruling of [Condemnee's] Preliminary Objections must not be reversed on appeal.

R.R. at 20i. Because the trial court's determination is consistent with *Sunoco I*, we hold that the trial court properly overruled Condemnee's Preliminary Objections. *See In re Condemnation of Sunoco Pipeline, L.P. (Appeal of Katz)* 165 A.3d 1044 (Pa. Cmwlth. No. 1747 C.D. 2016, filed July 3, 2017); *In re Condemnation of Sunoco Pipeline, L.P. (Appeal of Perkins)* (Pa. Cmwlth. No. 2030 C.D. 2016, filed June 29, 2017); *see also In re Condemnation of Sunoco Pipeline, L.P. (Appeal of Blume)* (Pa. Cmwlth. No. 1306 C.D. 2016, filed May 26, 2017); *In re Condemnation of Sunoco Pipeline, L.P. (Appeal of Homes for America, Inc.)* (Pa. Cmwlth. No. 565 C.D. 2016, filed May 24, 2017); *In re Condemnation of Sunoco Pipeline, L.P. (Appeal of Gerhart)* (Pa. Cmwlth. No. 220 C.D. 2016, filed May 15, 2017).[13]

---

[13] We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). We reference this Court's other recent Sunoco decisions herein for their persuasive value.

Based on the foregoing, there is no merit to Condemnee's position that our Supreme Court's *Robinson IV* decision requires Sunoco to reapply to the PUC for hearings concerning the public benefit of Mariner East 2.[14] *See* R.R. at 2f-40f. Indeed, *Robinson IV* reaffirmed that the public must be the primary and paramount beneficiary before eminent domain powers may be exercised by a private corporation. However, since the *Sunoco I* Court specifically declared that Sunoco is a PUC-certificated public utility authorized to exercise eminent domain powers for Mariner East 2 for the public good, *Robinson IV* does not require a different result.[15] By extension, the Property Rights Protection Act does not bar Sunoco's Declaration in this case. *See Perkins*.

## B. Landowner Exclusion

Condemnee also contends that "Sunoco cannot hide behind faulty PUC procedures to prohibit landowners from contesting the right to condemn when it provided no notice to the landowners that quiet enjoyment of their land was at risk." Condemnee Br. at 33. Specifically, Condemnee argues that the PUC's existing procedures unconstitutionally exclude landowners potentially impacted by Mariner East 2; Sunoco or the PUC were required to notify landowners that the PUC process would be used to remove private property rights; direct mail contact would have afforded reasonable minimal landowner notice; and, the Township did not have

---

[14] Because *Robinson IV* was issued two days *after* the trial court issued its September 26, 2016 order, the trial court erred by concluding that Condemnee waived this issue because it was "not raised in [the trial court] prior to the issuance of the appealed from [o]rder." Trial Ct. Op. at 19 n.13.

[15] *See also Blume*. Moreover, to the extent *Robinson IV* is limited to private, non-regulated corporations, and Sunoco herein has eminent domain authority as a PUC-certificated public utility, *Robinson IV* is distinguishable. *See also Gerhart*.

notice.[16]  *See* Condemnee Br. at 33-49.  Based upon our review of the record, Condemnee did not raise these procedural due process violation claims in its Preliminary Objections, but rather asserted them for the first time in its motion for reconsideration.  *See* R.R. at 31f-36f.  Condemnee again raised the issues in its Concise Statement of Issues [sic] Complained of on Appeal.  *See* R.R. at 2k-3k.  The trial court, in its decision, deemed the issues waived.  *See* R.R. at 20i.

The Eminent Domain Code makes clear that "[p]reliminary objections are the sole method by which a condemnee may challenge the declaration of taking." *In re Condemnation Proceeding by S. Whitehall Twp. Auth.*, 940 A.2d 624, 627 n.2 (Pa. Cmwlth. 2008); *see also* Section 306(a) of the Eminent Domain Code, 26 Pa.C.S. § 306(a).  Section 306(a)(3) of the Eminent Domain Codes specifies:

> **Preliminary objections shall be** limited to and shall be **the exclusive method** of challenging:
>
> (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
>
> (ii) The sufficiency of the security.
>
> (iii) The declaration of taking.
>
> (iv) Any other procedure followed by the condemnor.

26 Pa.C.S. § 306(a)(3) (emphasis added).  Section 306(b) of the Eminent Domain Code further declares that the "[f]ailure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver."  26 Pa.C.S. § 306(b).  Section 306(d) of the Eminent Domain Code requires that "[a]ll preliminary objections shall

---

[16] In essence, Condemnee claims that the PUC erred by not giving all landowners whose property may potentially be condemned by Sunoco for Mariner East 2 notice and an opportunity to be heard relative to Sunoco's CPC applications.

15

be raised at one time and in one pleading." 26 Pa.C.S. § 306(d). Section 306(c) of the Eminent Domain Code provides that preliminary objections must specifically state the grounds upon which they rely. *See* 26 Pa.C.S. § 306(c).

In the instant matter, because Condemnee's due process claims were not raised in its Preliminary Objections, they are waived. Condemnee's raising of those issues in its motion for reconsideration and its Concise Statement of Issues [sic] Complained of on Appeal did not preserve them. Accordingly, the trial court properly deemed Condemnee's due process violation claims waived, and this Court will not now consider them.

## C. Natural Resources Trustee

Condemnee further asserts that no entity is serving as trustee of the Commonwealth's natural resources for Mariner East 2. However, Condemnee did not include this issue in its Preliminary Objections. *See* R.R. at 2c-13c. Rather, Condemnee raised it for the first time in its Concise Statement of Issues [sic] Complained of on Appeal. *See* R.R. at 3k. The trial court declared the issue waived. *See* R.R. at 20i. Because Condemnee's trusteeship claim was not raised in its Preliminary Objections, the trial court properly concluded that that issue was waived, and this Court is precluded from addressing the issue. 26 Pa.C.S. § 306(a)-(d).

## D. Hearings

Condemnee finally argues that the trial court abused its discretion by failing to hold hearings relative to Condemnee's excessive takings and bond sufficiency claims. Initially, Section 306(f)(2) of the Eminent Domain Code provides, in pertinent part, that "[i]f an issue of fact is raised, the court shall take evidence by depositions or otherwise." 26 Pa.C.S. § 306(f)(2). Thus, this Court has declared that "[a]ccording to the Eminent Domain Code, the court must take evidence

16

if an issue of fact is raised. However, '[w]here . . . the issues before the court are purely legal, the court may rule on the preliminary objection without a hearing.'" *Dep't of Transp. v. Montgomery Twp.*, 655 A.2d 1086, 1088 (Pa. Cmwlth. 1995) (quoting *Miller v. Dep't of Transp.,* 498 A.2d 1370, 1373 (Pa. Cmwlth. 1985)).

1. Excessive Takings Hearing

Condemnee argues that the trial court erred by failing to hold an excessive takings hearing. Based upon our review of the record, Condemnee did not specifically raise this issue in Condemnee's Preliminary Objections. Although Condemnee previously argued that Sunoco's taking is excessive, the first time Condemnee expressly made this claim of error was in its motion for the trial court to reconsider its September 26, 2016 order overruling Condemnee's Preliminary Objections. *See* R.R. at 21f-22f, 27f, 36f-37f. Condemnee also raised this issue in its Concise Statement of Issues [sic] Complained of on Appeal. *See* R.R. at 1k-5K. Condemnee's presentation of this issue in its reconsideration motion and Concise Statement of Issues [sic] Complained of on Appeal, rather than in its Preliminary Objections, did not preserve it. 26 Pa.C.S. § 306(a)-(d). Under the circumstances, the issue is waived.

2. Bond Sufficiency Hearing

In its Preliminary Objections, Condemnee specifically objected and requested a hearing as to whether the bond "is *insufficient security* for just compensation for the permanent easement to be appropriated by Sunoco or payment for damages to the [P]roperty or arising out of the anticipated two-year or longer duration of Sunoco's occupation on the [P]roperty to construct and install the

17

pipeline." R.R. at 11c (emphasis added); *see also* R.R. at 10c-11c (Objection IX), 15c, 35c-36c; Condemnee Br. at 15-16, 18.

Sunoco responds that the trial court properly decided Condemnee's bond sufficiency objection based on the law and facts in the pleadings and, thus, no hearing was required.[17] *See* Sunoco Br. at 31. Sunoco specifically asserts that, because the bond's purpose is to secure future payment of just compensation, the relevant consideration is the condemnor's *ability to pay* just compensation and, since Sunoco posted the bond based upon a professional appraisal, and the bond is backed by a surety, Condemnee is appropriately assured without a hearing that Sunoco will be able to pay just compensation.[18] *See* Sunoco Br. at 31-32.

Section 303(a) of the Eminent Domain Code requires that "every condemnor shall give security to effect the condemnation by filing with the declaration of taking its bond, without surety, to the Commonwealth for the use of the owner of the property interests condemned[.]" 26 Pa.C.S. § 303(a). Here, Sunoco filed a $23,000.00 bond. *See* Condemnee Br. at 6; *see also* R.R. at 19a-20a, 229a-236a. The bond reflects that the amount was calculated based upon an appraisal of the Property's reasonable just compensation. *See* R.R. at 229a. Despite that such

---

[17] In its brief in opposition to Condemnee's Preliminary Objections, Sunoco argued that Sunoco's bond was based upon a professional appraisal and, therefore, was adequate. *See* C.R. Item 7 (Sunoco Br. in Opp. to Preliminary Objections) at 25-26; *see also* Ex. 2 (Appraisal).

[18] Sunoco claims that Condemnee objected to the bond amount as "*too little compensation for the taking,*" which Section 306(b) of the Eminent Domain Code prohibits from being raised by preliminary objection. Sunoco Br. at 32 (emphasis added). We acknowledge that Section 306(b) of the Eminent Domain Code states: "Issues of compensation may not be raised by preliminary objections." 26 Pa.C.S. § 306(b). However, Condemnee's specific objection here is that the bond "is *insufficient security* for just compensation[.]" R.R. at 11c (emphasis added). Section 306(a)(3)(ii) of the Eminent Domain Code makes preliminary objections the exclusive method to challenge "[t]he sufficiency of security." 26 Pa.C.S. § 306(a)(3)(ii); *see also In re Condemnation by the Dep't of Transp. of Right of Way for Legislative Route 146*, 547 A.2d 867 (Pa. Cmwlth. 1988). Because Condemnee's objection is clearly based on whether Sunoco has provided sufficient security, and not the amount of damages to which it may ultimately be entitled, it properly raised the issue by Preliminary Objection.

measure was not statutorily required, Sunoco had Liberty Mutual Insurance Company secure the bond as surety. *See* R.R. at 229a. In ruling on the bond's sufficiency, the trial court declared: "The bond [Sunoco] posted is adequate to secure payment of just compensation."[19] Trial Ct. Order at 2. The trial court did not specify in its opinion the basis upon which it decided that the bond Sunoco posted for this taking was sufficient.

Section 303 of the Eminent Domain Code does not require the trial court to hold a bond sufficiency hearing. Rather, Section 303(c) of the Eminent Domain Code states: "The court . . . may require the condemnor to give bond and security as the court deems proper if it appears to the court that the bond . . . of the condemnor is insufficient security." 26 Pa.C.S. § 303(c). However, this Court, following the Supreme Court's declaration in *In re Redevelopment Authority of Altoona*, 254 A.2d 653 (Pa. 1969), held: "**It is well settled that in cases in which *the sufficiency of the security* is challenged by preliminary objection, the condemnee is entitled to a hearing and an opportunity to present evidence**." *Milford Traumbauersville Area Sewer Auth. v. Approximately 0.753 Acres of Land*, 358 A.2d 450, 451 (Pa. Cmwlth. 1976) (emphasis added).[20] Thereafter, "[t]he judgment of the trial court as to the

---

[19] In its opinion, the trial court pronounced that "the matter of determining adequacy of the bond is left until after the appropriateness of a condemnation has been established." Trial Ct. Op. at 19 (citing *Dep't of Transp. v. Montgomery Twp.*, 655 A.2d 1086 (Pa. Cmwlth. 1995)). However, since the trial court dismissed Condemnee's Preliminary Objections and, by doing so, declared the condemnation proper, it was further required to assess the bond's sufficiency.

[20] Sunoco argues that no evidentiary hearing was necessary in this case since Condemnee did not question Sunoco's ability to pay just compensation. In support of its position, Sunoco cites to a non-precedential common pleas court opinion. *See* Sunoco Br. at 32-33. Sunoco also relies upon eminent domain *compensation* provisions that are inapplicable at this stage of the proceeding. *See* Sunoco Br. at 31. In addition, Sunoco cites *Golden Dawn Shops, Inc. v. Philadelphia Redevelopment Authority*, 282 A.2d 395 (Pa. Cmwlth. 1971), wherein this Court held that the trial court was required to hold a hearing relative to the bond's sufficiency before dismissing the preliminary objections. *See* Sunoco Br. at 31. Sunoco further relies upon *York City Redevelopment Authority of City of York v. Ohio Blenders, Inc.*, 956 A.2d 1052 (Pa. Cmwlth. 2008), in which the

amount of the security will be disturbed only where there is a manifest abuse of discretion." *York City Redevelopment Auth. of City of York v. Ohio Blenders, Inc.*, 956 A.2d 1052, 1061 (Pa. Cmwlth. 2008).

Based on the foregoing, the trial court erred by not holding a bond sufficiency hearing before overruling Condemnee's Preliminary Objections. As a result, we have no record upon which to determine if the trial court abused its discretion. Under the circumstances, this Court is constrained to remand this matter for the trial court to conduct an evidentiary hearing limited to the sufficiency of the bond Sunoco posted for this condemnation.

### III. Conclusion

Based on the foregoing, we vacate the trial court's ruling that "[t]he bond [Sunoco] posted is adequate to secure payment of just compensation" (Trial Ct. Order at 2; *see also* Objection IX), and remand this matter to the trial court for an

---

trial court's bond sufficiency determination was made after a hearing. *See* Sunoco Br. at 31. Accordingly, Sunoco's argument cannot stand.

Moreover, Sunoco's contention is contrary to well-established precedent that a trial court must hold a hearing to determine a condemnor's security bond's sufficiency before dismissing preliminary objections regarding the same. *See also In re Condemnation by the Econ. Borough Mun. Auth.*, 834 A.2d 685, 691 (Pa. Cmwlth. 2003) ("Where an objection to the sufficiency of the bond is raised, the trial judge should not dismiss the objection without requiring an answer and holding a hearing."); *Appeal of Conway*, 432 A.2d 276, 278 (Pa. Cmwlth. 1981) ("In order to make a determination on the merits of [as to the sufficiency of the condemnor's security], an adequate record should have been made before the trial judge dismissed the preliminary objections."); *Appeal of Milas*, 387 A.2d 183, 184 (Pa. Cmwlth. 1978) ("[T]he court must examine the sufficiency of the bond with the aid of an adequate record."); *Riehl v. Millcreek Twp. Sewer Auth.*, 362 A.2d 478, 481 (Pa. Cmwlth. 1976) ("[W]here an objection to the sufficiency of the bond is raised, the trial judge should not dismiss the objection without requiring an answer and holding a hearing.").

evidentiary hearing limited to the sufficiency of the bond Sunoco posted for this condemnation. We affirm the trial court's order in all other respects.

_____
ANNE E. COVEY, Judge

Judge Wojcik did not participate in the decision in this matter.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco :
Pipeline L.P. of Permanent and :
Temporary Rights of Way and :
Easements for the Transportation :
Of Ethane, Propane, Liquid Petroleum :
Gas, and other Petroleum Products in :
ThornburyTownship, Delaware County, :
Pennsylvania, Over the Lands of :
Traymore Investment Partners, L.P. :
 :
Appeal of: Andover Homeowners' : No. 1780 C.D. 2016
Association Inc. :

## O R D E R

AND NOW, this 24th day of October, 2017, the portion of the Delaware County Common Pleas Court's (trial court) September 26, 2016 order ruling that "[t]he bond [Sunoco] posted is adequate to secure payment of just compensation" (Trial Ct. Order at 2; *see also* Objection IX) is vacated, and this matter is remanded to the trial court to hold an evidentiary hearing limited to the sufficiency of the bond Sunoco Pipeline L.P. posted for this condemnation. The trial court's order is affirmed in all other respects.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge